FILED

NOT FOR PUBLICATION

2/19/2014

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | | |
|---|---|---|
| In re: | ) | BAP No. AZ-13-1215-PaKuD |
| | ) | |
| CYNTHIA L. MESSER, | ) | Bankr. No. 11-03007-RTB |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| CYNTHIA L. MESSER, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | **M E M O R A N D U M**[1] |
| | ) | |
| EDWARD J. MANEY, Chapter 13 | ) | |
| Trustee, | ) | |
| | ) | |
| Appellee. | ) | |
| _____ | ) | |

Argued and Submitted on January 23, 2014
at Tempe, Arizona

Filed - February 19, 2014

Appeal from the United States Bankruptcy Court
for the District of Arizona

Honorable Redfield T. Baum Sr., Bankruptcy Judge, Presiding[2]

_____

Appearances:   David Allegrucci argued for appellant Cynthia L. Messer; Andrew M. Dudley argued for appellee Edward J. Maney, Chapter 13 Trustee.

_____

Before: PAPPAS, KURTZ, and DUNN, Bankruptcy Judges.

_____

[1]   This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

[2]   Judge Baum entered the order in this appeal before his retirement. The case was thereafter assigned to the Honorable Eddward P. Ballinger Jr.

Chapter 13[3] debtor Cynthia L. Messer ("Debtor") appeals the bankruptcy court's decision declining to confirm her proposed chapter 13 plan. Based on that ruling, Debtor proposed another plan, which was confirmed, and she appeals that confirmation order. We AFFIRM the decision of the bankruptcy court, albeit for different reasons than relied upon by the court.

**FACTS**

On February 7, 2011, Debtor filed a chapter 7 petition. In her schedule B, she disclosed her interest in an annuity, which she valued at $2,000, and which she claimed as fully exempt in schedule C.[4] The chapter 7 trustee objected to Debtor's claim of exemption, that objection was sustained, and the exemption was disallowed by the bankruptcy court.

On September 14, 2011, Debtor converted the case to chapter 13; Edward J. Maney was appointed to serve as chapter 13 trustee ("Trustee").[5] On October 10, 2011, Debtor filed her

---

[3] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all Rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037, and all Civil Rule references are to the Federal Rules of Civil Procedure 1–86.

[4] Debtor's schedules are not included in the record on appeal. However, we have exercised our discretion to take judicial notice of the pleadings and other papers filed in the bankruptcy court's docket. Fed. R. Evid. 201; O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957-58 (9th Cir. 1989).

[5] Debtor appealed the bankruptcy court's ruling denying the annuity exemption. The Panel affirmed in an unpublished decision. Messer v. Maney (In re Messer), 2012 WL 762828 (9th (continued...)

-2-

proposed "Chapter 13 Plan and Application for Payment of Administrative Expense."  The plan proposed that she would make forty-eight monthly payments to Trustee of $355 each.

On January 23, 2012, Debtor filed a "Motion for Court to Value Annuity Stream of Income," to which Trustee objected.  The bankruptcy court conducted an evidentiary hearing concerning the value of Debtor's interest in the annuity on February 28, 2012.  At the hearing, Debtor called Kirk Hughes, a representative of Settlement Capital, to testify.  He indicated that his company would purchase twenty-five of Debtor's future annuity payments for a total of $33,041.[6]  Trustee called Sebastian W. Manera, an Arizona chapter 7 trustee, to testify.  It is unclear whether Mr. Manera offered any opinion of the liquidation value of the annuity.  However, he opined that, if he were to be the trustee in a hypothetical chapter 7 case in which Debtor's annuity was an asset, he would simply hold the chapter 7 case open long enough to collect annuity payments in an amount sufficient to pay all of Debtor's creditors in full.[7]

---

[5](...continued)
Cir. BAP Mar. 9, 2012).

[6] The record includes scant information about the annuity. However, from the bankruptcy court's Minute Entry/Order following the valuation hearing, we can surmise that Debtor was entitled to receive $1,950 per month from the annuity, and that there remained at least five more years of monthly payments due to her as of March 2, 2012.

[7] While the value of the annuity discussed at the hearing is critical to resolution of the issues, regrettably, the parties did not provide a transcript of the evidentiary hearing.

(continued...)

In a Minute Entry/Order entered after the hearing, the bankruptcy court indicated that it accepted Debtor's evidence concerning the value of 25 annuity payments, but expressed skepticism "about the significance of the cash out value of some portion of the annuity." The court suggested there was a "fundamental disconnect" between Debtor's request to determine the value of the annuity in this fashion, and the § 1325(a) plan confirmation requirements, noting that the court "seriously doubt[ed] that evidence advances the debtor's ability to confirm a plan."

On July 20, 2012, Debtor filed an Amended Chapter 13 Plan and Application for Payment of Administrative Expenses ("Amended Plan"). The Amended Plan proposed payments of $355 per month for months 1-10, and $1,225 per month for months 11-48, for a total of $50,100. As of October 4, 2012, a total of $40,317.73 of unsecured claims had been filed in Debtor's case.[8] As a result, the Amended Plan payments were not sufficient to pay all creditor claims and administrative expenses in full, and Trustee therefore recommended to the bankruptcy court that the Amended Plan not be confirmed. A confirmation hearing was held on November 8, 2012. On January 8, 2013, the bankruptcy court entered an order denying

[7](...continued)
However, the parties to this appeal, as well as the bankruptcy court, appear to agree upon the substance of Mr. Hughes' and Mr. Manera's testimony as summarized herein. We therefore rely upon their account of the testimony as accurate.

[8] As of May 8, 2013, the allowed creditor claims, excluding secured claims and chapter 13 trustee compensation, but including chapter 7 trustee expenses, totaled $41,518.73.

-4-

confirmation of the Amended Plan.

On March 22, 2013, Debtor filed a motion to reconvert the case to chapter 7, to which Trustee objected. However, on April 19, 2013, the bankruptcy court entered a stipulated order confirming another amended plan ("Second Amended Plan"). In the Second Amended Plan, Debtor proposed sixty months of payments rather than forty-eight, which increased the total to be paid in from the $50,100 proposed in the Amended Plan, to $67,350, an amount sufficient to pay all allowed claims in full.

On May 2, 2013, Debtor appealed this confirmation order.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (L). As explained below, we have jurisdiction under 28 U.S.C. § 158.

## ISSUE[9]

Whether the bankruptcy court erred when it denied confirmation of Debtor's Amended Plan because, based on the value of the annuity, that plan did not satisfy the "best interests of the creditors" test under § 1325(a)(4).

## STANDARDS OF REVIEW

A bankruptcy court's decision concerning confirmation of a chapter 13 plan is reviewed for abuse of discretion. Bank of Am. Nat'l Trust and Sav. Ass'n (In re Slade), 15 B.R. 910, 913 (9th

---

[9] Debtor initially also appealed the bankruptcy court's order denying her motion to compel Trustee to pay certain court-approved attorneys fees and costs. However, in her reply brief in this appeal, she concedes that any issues concerning that order are now moot, and requests the Panel not consider them. We therefore do not review that order.

-5-

Cir. BAP 1981). This standard has two parts. First, we consider whether the bankruptcy court applied the correct legal standard; and second, we must decide whether the court's factual findings supporting the legal analysis were clearly erroneous. United States v. Hinkson, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc).

Rulings concerning confirmation of a chapter 13 plan present mixed questions of fact and law. The bankruptcy court's factual determinations are reviewed under the clearly erroneous standard, while its legal determinations are reviewed de novo. Meyer v. Lepe (In re Lepe), 470 B.R. 851, 855 (9th Cir. BAP 2012) (citing Andrews v. Loheit (In re Andrews), 155 B.R. 769, 770 (9th Cir. BAP 1993)).

The liquidation value of a debtor's assets for purposes of the best interests of creditors test presents a question of fact. United States v. Arnold and Baker Farms (In re Arnold and Baker Farms), 177 B.R. 648, 653 (9th Cir. BAP 1994). As such, we review the bankruptcy court's value findings under the clearly erroneous standard. Varela v. Dynamic Brokers, Inc. (In re Dynamic Brokers, Inc.), 293 B.R. 489, 493 (9th Cir. BAP 2003); In re Arnold and Baker Farms, 177 B.R. at 653; Rule 8013. Such review is "significantly deferential, requiring a 'definite and firm conviction that a mistake has been committed.'" McDonald v. Metz (In re Metz), 225 B.R. 173, 175 (9th Cir. BAP 1998) (quoting Granite State Ins. Co. v. Smart Modular Tech., Inc., 76 F.3d 1023, 1028 (9th Cir. 1996), which in turn quoted from Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal., 508 U.S. 602, 623 (1993)).

-6-

**DISCUSSION**

**A. Procedural Considerations**

Because an order denying confirmation of a chapter 13 plan is not a final, appealable order, Debtor in this case chose to amend her plan to propose terms which satisfied the concerns of the bankruptcy court, and to stipulate with Trustee to confirm that plan. While Debtor consented to confirmation of the Second Amended Plan, through this procedure, a final order was entered which provided Debtor a vehicle to argue on appeal that the Amended Plan should have been confirmed by the bankruptcy court.

The Panel has endorsed this approach to establish our jurisdiction to review issues involving denial of plan confirmation. Parks v. Drummond (In re Parks), 475 B.R. 703, 706 (9th Cir. BAP 2012); Giesbrecht v. Fitzgerald (In re Giesbrecht), 429 B.R. 682, 687 (9th Cir. BAP 2010) (noting that an interlocutory order denying confirmation "merged into the court's final confirmation order, and is sufficient to support appellate jurisdiction of the earlier interlocutory order."). In essence, then, in this appeal, Debtor does not argue that confirmation of the Second Amended Plan by the bankruptcy court was improper, but rather, that the court erred when it refused to confirm her Amended Plan. It is that decision we now review.

**B. Confirmation and the Best Interests of Creditors Test**

Debtor's exclusive argument on appeal is that the bankruptcy court improperly valued her interest in the annuity for purposes of determining whether the Amended Plan satisfied the best interests of creditors test under § 1325(a)(4). Section 1325 governs chapter 13 plan confirmation, and in order for a

-7-

chapter 13 plan to be confirmed, "each of the requirements of section 1325 must be present and the debtor has the burden of proving that each element has been met." Barnes v. Barnes (In re Barnes), 32 F.3d 405, 407 (9th Cir. 1994); Drummond v. Welsh (In re Welsh), 465 B.R. 843, 847 (9th Cir. BAP 2012). Debtor contends that the Amended Plan satisfied all requirements for confirmation listed in § 1325(a).

Trustee does not dispute that the Amended Plan satisfied the confirmation standards, except that set forth in § 1325(a)(4). That section of the Code provides:

> (a) Except as provided in subsection (b), the court shall confirm a plan if —
>
> * * * * *
>
> (4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date[.]

§ 1325(a)(4).

Two separate calculations must be performed in order to determine whether a debtor's proposed plan satisfies the best interest of creditors test under § 1325(a)(4). First, the bankruptcy court must measure "the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim . . . ." § 1325(a)(4); Jensen v. Dunivent (In re Dewey), 237 B.R. 783, 788 (10th Cir. BAP 1999). Since plans usually involve monthly payments to be made over time, the bankruptcy court must determine the present value of the property to be distributed to unsecured creditors through the plan – the stream of plan payments to creditors – as

-8-

of the effective date of the plan. In re Gibson, 415 B.R. 735, 737 (Bankr. D. Ariz. 2009); see also United States v. Camino Real Landscape Maint. Contractors, Inc. (In re Camino Real Landscape Maint. Contractors, Inc.), 818 F.2d 1503, 1505 (9th Cir. 1987) (stating "'value, as of the effective date of the plan,' as used in § 1129(a)(9)(C) and several other sections of the Bankruptcy Code, 'indicates that the promised payment under the plan must be discounted to present value as of the effective date of the plan.'") (quoting H.R.Rep. No. 595, 95th Cong., 1st Sess. 408, reprinted in 1978 U.S. Code Cong. & Admin. News 5963, 6364). While there is no indication in the record that the bankruptcy court considered anything other than the total amount of payments Debtor proposed under her Amended Plan, as opposed to the present value of those payments, Debtor has not challenged the bankruptcy court's calculation in this appeal.

The second calculation under § 1325(a)(4) focuses on "the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date." § 1325(a)(4); In re Dewey, 237 B.R. at 788. This measurement computes the sum that would be available to each unsecured creditor if a hypothetical chapter 7 liquidation of the debtor's assets were completed on the effective date of the plan. In re Gibson, 415 B.R. at 737. This sum is then compared to the first calculation. In order for the plan to be confirmed, the first sum – the chapter 13 plan amount – must be "not less" than the second sum – the chapter 7 liquidation amount – as to each specific unsecured creditor. This methodology insures the unsecured creditors will fare no worse under chapter 13 than

-9-

under chapter 7. It is this second figure the parties dispute in this appeal.

Trustee contends, under the facts of Debtor's case, and as his witness so testified, in a hypothetical chapter 7 case involving Debtor, a trustee would not sell Debtor's right to receive payments under the annuity, but would simply collect the future payments until enough funds had been received to fully satisfy all unsecured creditor claims. Since the amount of payments to be received by Debtor under the annuity greatly exceeded to total amount she owed to her creditors, Trustee argues, to be confirmed, any plan proposed by Debtor in this case must pay her unsecured creditors in full.

In contrast, Debtor argues that in determining the hypothetical liquidation value of the annuity, the bankruptcy court should have adopted a cash-out, present day value of twenty-five of the annuity payments. Because the Amended Plan proposed payments in excess of this value, Debtor argues it met the best interests test.

To support her argument, Debtor points to the term "liquidated" in § 1325(a)(4). She contends that because chapter 7 does not require liquidation on a specific date, and would indeed permit a case to be held open while annuity payments are collected by the chapter 7 trustee, then the court must employ the term "liquidated" in its chapter 13 analysis in a way chapter 7 does not. Debtor contends that § 1325(a)(4) requires the bankruptcy court to compare creditor treatment under the chapter 13 plan with the present value of the assets available for liquidation in a hypothetical chapter 7 case on a specific

-10-

date - the effective date of the debtor's plan - rather than how the assets might be liquidated in the course of an actual chapter 7 case.

Here, the bankruptcy court denied confirmation of Debtor's Amended Plan, presumably deciding that it did not satisfy the best interests of creditors test. We believe the bankruptcy court's conclusion was correct. However, we decline to endorse either Trustee's or Debtor's positions concerning the application of the test.

1. The Effective Date of the Plan

The starting point for a bankruptcy court's value calculation for purposes of the best interest test is well established in this circuit. Though the Code employs the phrase "effective date of the plan" in several places, it does not define it. However, the phrase has been interpreted to mean the date the plan becomes binding on the parties. Countrywide Home Loans, Inc. v. Hoopai (In re Hoopai), 581 F.3d 1090, 1100-01 (9th Cir. 2009); Pak v. eCast Settlement Corp. (In re Pak), 378 B.R. 257, 265 (9th Cir. BAP 2007) ("[T]he most logical interpretation of the 'effective date of the plan' is the date of plan confirmation, as a chapter 13 plan is not binding on the debtor and other interested parties until it is confirmed.") (subsequent history omitted). Generally, a plan becomes binding on the parties upon confirmation, although the plan may provide for a specific date on which it becomes effective. In re Hoopai, 581 F.3d at 1101.

Because Debtor's Amended Plan did not include a specific effective date, the "effective date of the plan" in this case is

-11-

the confirmation date. As a result, we consider whether the amount Debtor proposed for payments in the Amended Plan to the holders of allowed unsecured claims is at least equal to the amount which would be paid on each claim if Debtor's estate were liquidated under chapter 7, as of the date of the hearing on confirmation of the Amended Plan.

2. Property of the Estate

Section 541(a)(1) provides that the commencement of a bankruptcy case creates an estate comprised of "all legal or equitable interests of the debtor in property[.]" As the Code is applied here, then, all of Debtor's rights under the annuity, including its payment stream, are property of the bankruptcy estate. Put another way, the estate's interest in the stream of payments from the annuity is not limited solely to the next payment, or even to the payments which will be disbursed during the pendency of the chapter 13 plan. See In re Myers, 200 B.R. 155, 159 (Bankr. N.D. Ohio 1996) (under § 541(a), all payments to be received under the terms of a structured settlement were property of the estate); Turner v. Dees (In re Dees), 155 B.R. 238, 240 (Bankr. S.D. Ala. 1992) (structured annuity benefits from a wrongful death settlement accruing before and after the filing of the bankruptcy petition are estate property); In re Hartman, 115 B.R. 171, 175 (W.D. Ark. 1990) (full value of debtor's vested interest in retirement plan is property of his chapter 13 estate and must be considered in complying with the requirements of § 1325). Moreover, the fact that assignment of an annuity may be restricted by its terms does not prevent its inclusion in Debtor's bankruptcy estate, nor does it render the

annuity valueless. See § 541(c); <u>Shackleford v. United States</u>, 262 F.3d 1028 (9th Cir. 2001) (affirming the district court's conclusion that a non-assignable lottery annuity had a marketable value, although it was considerably less than the Internal Revenue Code tables provided).

Applying these principles to the facts, as property of the bankruptcy estate, the entire value of Debtor's annuity was property of her bankruptcy estate and was subject to valuation for purposes of § 1325(a)(4).

3. <u>Valuation</u>

Of course, the value of Debtor's interest in the annuity is the crux of the § 1325(a)(4) issue in this appeal. Trustee's position is that because a chapter 7 trustee could simply keep a case open long enough to collect annuity payments sufficient to ensure full payment to unsecured creditors, then full payment to creditors is required for a confirmable chapter 13 plan. Debtor insists that the cash-out or present day value of the annuity, as established by her expert, was equal to twenty-five annuity payments. We disagree with both arguments, and hold that the value of an annuity for purposes of § 1325(a)(4) analysis was the present day value of the entire annuity as of the confirmation hearing date.

The language of § 1325(a)(4) is instructive. The sum to be compared with the value of Debtor's payments under her Amended Plan is the amount that would be distributed on each allowed unsecured claim if, hypothetically, Debtor's estate were liquidated under chapter 7 "on such date." The inclusion of this temporal designation – and its focus on a single date – requires

-13-

the bankruptcy court to fix the present value of Debtor's assets, including her right to receive future annuity payments, to complete the § 1325(a)(4) equation.[10]

There is surprisingly little case law examining this issue. In In re Martin, 233 B.R. 436, 440 (Bankr. D. Ariz. 1999), the debtor proposed to pay the "present value of a non-exempt annuity" into her chapter 13 plan. Because the plan provided for payments totaling more than debtor's non-exempt assets would generate through a liquidation, the bankruptcy court found § 1325(a)(4) was satisfied. The debtor determined the annuity's value after receiving a third-party estimate of its cash value, along with an offer to purchase it. It was this value she utilized in preparing her schedules and plan. While a creditor challenged the value of the remaining annuity payments, the creditor offered no evidence to place the offer in question and, therefore, the bankruptcy court found debtor's valuation to be proper.

A case cited by Trustee supports this value approach as well. In In re Myers, supra, the debtor was the beneficiary of a structured tort settlement. In measuring the value of the settlement for purposes of § 1325(a)(4), the debtor contended that the present value of only the next periodic payment to be made under the settlement should be considered. The bankruptcy

[10] The term "present value" is not defined in the Code. Black's defines it as: "the sum of money that, with compound interest, would amount to a specified sum at a specified future date; future value discounted to its value today." Black's Law Dictionary 1303-04 (9th ed. 2009) (emphasis added).

-14-

court disagreed, noting that under § 541(a), all payments to be received by the debtor under the settlement were property of the estate. As such, the court held that "the Chapter 7 liquidation value [of the settlement] is the present value of all of those payments, not merely the next one due." 200 B.R. at 159.

Finally, a leading bankruptcy treatise concurs with the authorities cited above:

> The best interests test under section 1325(a)(4) requires that the property offered the holder of each allowed unsecured claim have a present value, as of the effective date of the plan, not less than the amount that would be paid if the debtor's estate were liquidated under chapter 7. <u>The language of the statute plainly means that the court is to ascribe a liquidation value to all nonexempt property of the estate, as that term is defined under section 541.</u>

Vol. 8 COLLIER ON BANKRUPTCY ¶ 1325.05(2)(d) (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2013) (emphasis added); <u>see also</u> Vol. 7 William L. Norton, Jr., NORTON BANKRUPTCY LAW & PRACTICE, § 151:11, at 151-72 (3d ed. 2010) ("[l]iquidation in a chapter 7 case [for purposes of the best interest of creditors test under § 1325(a)(4)] involves the collection of all of the debtor's nonexempt property and the reduction of that property to cash"); Hon. W. Homer Drake, Hon. Paul W. Bonapfel & Adam M. Goodman, CHAPTER 13 PRACTICE & PROCEDURE § 9E:7, at 1017 (2012) ("the key question is what the Chapter 7 trustee could obtain in a liquidation sale. Thus, fair market value of property, rather than its forced sale, governs . . . .").

Because § 1325(a)(4) requires a liquidation analysis of a debtor's assets as of the confirmation date (i.e., the "effective date of the plan"), under these facts, the bankruptcy court should have determined the present value of the stream of annuity

-15-

payments to be made in the future to Debtor. In other words, neither Debtor's approach to determining the liquidation value of a discreet number of payments, nor Trustee's approach of collecting future payments, properly valued Debtor's annuity in this case. Instead, the Code required the bankruptcy court to calculate the liquidation value of the entire annuity in order to determine the outcome of the best interests of creditors test.

Trustee's position promoting a hypothetical liquidation of Debtor's assets over many months is contrary to the Code.[11] Moreover, while Debtor's position on appeal is closer to correct, her execution of the required methodology at the hearing was also flawed. Although she perhaps determined through her witness the present day value of the stream of some payments, § 1325(a)(4) required her to prove up the liquidation value of all remaining annuity payments, since the whole annuity was an asset of her bankruptcy estate.

It does not appear the bankruptcy court necessarily relied upon either Debtor's or Trustee's valuation. In valuing the annuity, the bankruptcy court stated:

> Even assuming that the debtor is correct in her assertion that her "actual" allowable claims are approximately $30,000.00, her annuity alone will pay her about $117,000.00 over a 5 year period [the maximum plan term]. Stated differently one apparent plan method to pay her "actual" creditors in full would be to commit 25% of her annuity payments to her plan over a 5 year term. Considering the foregoing, the court is

---

[11] Of course, it was not Trustee's burden to prove valuation under § 1325(a)(4); the debtor bears the burden of proving each element required for confirmation under § 1325(a), including value of the assets in the hypothetical chapter 7 liquidation. In re Welsh, 465 B.R. at 847.

-16-

> skeptical about the significance of the cash out value of some portion of the annuity. Particularly considering that the debtor and/or the estate do much better economically by not cashing out the annuity and instead using the same payment stream to pay creditors and the debtor's allowable monthly expenses.

Minute Entry/Order, March 2, 2012 at 2 (parenthetical in original) (emphasis added). And later, in denying confirmation of the Amended Plan, the bankruptcy court referred to its prior decision:

> In that ruling, although the court accepted debtor's evidence of value if the annuity were cashed out as asserted by the debtor, the court also found that the debtor had the ability in chapter 13 to "pay her actual creditors in full." The court then noted that it "seriously doubts that evidence advances the debtor's ability to confirm a plan" referencing Section 1325 because of the ability to pay in full. Apparently, nothing has changed. Because the debtor can pay her creditors in full her plan must so provide.

Minute Entry/Order, December 20, 2012 at 1-2.

Regardless of the bankruptcy court's methodology, we conclude that it correctly decided that confirmation of Debtor's Amended Plan should be denied, because Debtor did not satisfy her burden to show that the Amended Plan satisfied the § 1325(a)(4) best interest of creditors test.

**CONCLUSION**

We AFFIRM the decision of the bankruptcy court.

-17-