FILED

AUG 06 2012

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**ORDERED PUBLISHED**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP No.   MT-11-1366-JuMkH |
| ) | |
| BARRON D. PARKS and LINDA R. ) | Bk. No.   11-60050 |
| PARKS, ) | |
| ) | |
| Debtors. ) | |
| _____) | |
| ) | |
| BARRON D. PARKS; LINDA R. ) | |
| PARKS, ) | |
| ) | |
| Appellants, ) | |
| ) | |
| v. ) | **O P I N I O N** |
| ) | |
| ROBERT G. DRUMMOND, Chapter 13) | |
| Trustee, ) | |
| ) | |
| Appellee. ) | |
| _____) | |

Argued and Submitted on June 14, 2012
at Boise, Idaho

Filed - August 6, 2012

Appeal from the United States Bankruptcy Court
for the District of Montana

Hon. Ralph B. Kirscher, Chief Bankruptcy Judge, Presiding

_____

Appearances:    Craig D. Martinson, Esq., of Patten, Peterman, Bekkedahl & Green, PLLC, argued for Appellants; Appellee Robert G. Drummond, Esq., chapter 13 trustee, argued pro se; William A. McNeal, Esq., of Becket & Lee LP on brief for eCast Settlement Corp. as amicus curiae supporting appellee.

_____

Before:  JURY, MARKELL, and HOLLOWELL, Bankruptcy Judges.

JURY, Bankruptcy Judge:

Relying on § 541(b)(7)(A)[1], above-median chapter 13 debtors, Barron and Linda Parks, calculated their disposable income by deducting voluntary postpetition 401(k) contributions in the amount of $318 per month from their monthly income. They then sought confirmation of their first amended plan.

The chapter 13 trustee, Robert G. Drummond, objected to confirmation of debtors' proposed plan on the ground that deductions for voluntary postpetition 401(k) contributions were not authorized for purposes of calculating disposable income under § 1325(b)(2) based on the holding in In re Prigge, 441 B.R. 667 (Bankr. D. Mont. 2010).[2] Following its own decision in Prigge, the bankruptcy court sustained the trustee's objection and debtors appealed. For the reasons stated below, we AFFIRM.

## I. FACTS

The relevant facts are few and undisputed. On January 14, 2011, the Parks filed their chapter 13 petition. At that time, both Barron and Linda were employed and had been contributing approximately $318 per month to their respective 401(k) plans

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532 and "Rule" references are to the Federal Rules of Bankruptcy Procedure.

[2] We authorized eCAST Settlement Corporation ("eCAST") to file its brief amicus curiae. eCAST is the assignee of an unsecured claim totaling $7,037.56 which comprises over twenty-seven percent of the total filed unsecured claims. Not surprisingly, eCAST aligns itself with the trustee's position because it stands to recover more from debtors if the voluntary retirement deductions are not allowed.

-2-

prior to filing. In calculating their disposable income on Official Form 22C, the above-median debtors claimed a deduction of $318 per month for their voluntary 401(k) contributions on Line 55. Debtors showed monthly disposable income listed on Line 59 of -$40.04. Debtors' Schedules I and J, which set out anticipated income and actual expenses, showed monthly income of $5,559.57 and expenses of $4,672.60, for a monthly net income of $886.97.

Debtors filed their initial plan on January 28, 2011 and filed their first amended plan on February 28, 2011. Their first amended plan proposed monthly payments of $475.03 for a term of 60 months.

On March 2, 2011, the trustee objected to the confirmation of debtors' first amended plan contending that their 401(k) contributions should not be allowed as an ongoing deduction in computing their disposable income. Following an evidentiary hearing and post-hearing briefing by the parties, the bankruptcy court issued a Memorandum of Decision sustaining the trustee's objection based on Prigge. The court entered an order denying confirmation of debtors' first amended plan on June 22, 2011. This appeal followed.

## II. JURISDICTION

The bankruptcy court had jurisdiction over this proceeding under 28 U.S.C. §§ 1334 and 157(b)(2)(L). We have jurisdiction under 28 U.S.C. § 158, subject to the resolution of a possible mootness issue that we discuss below.

The order denying confirmation of debtors' first amended chapter 13 plan is an interlocutory order. Giesbrecht v.

-3-

Fitzgerald (In re Giesbrecht), 429 B.R. 682, 687 (9th Cir. BAP 2010). We may hear an appeal from an interlocutory order only if we grant leave to appeal. Id. However, if prior to our addressing the finality issue, another order is entered fully and finally disposing of the matter, the finality defect associated with the prior interlocutory order can be deemed "cured." Cato v. Fresno City, 220 F.3d 1073, 1074–75 (9th Cir. 2000). Here, the interlocutory order appealed became final when debtors' third amended plan dated July 12, 2011, was confirmed by order entered on July 14, 2011. Debtors did not appeal this final order. Therefore, we must consider whether debtors' appeal of the order denying confirmation of their first amended plan has been rendered moot.

We sua sponte raise the issue of mootness. Omoto v. Ruggera (In re Omoto), 85 B.R. 98, 99–100 (9th Cir. BAP 1988). "A claim is moot if it has lost its character as a present, live controversy." United States v. Geophysical Corp. of Alaska, 732 F.2d 693, 698 (9th Cir. 1984). We do not have jurisdiction over a claim for which no effective relief can be granted. Id. In this case, all potential relief is not foreclosed because if we were to reverse on the merits, debtors could file a motion to modify their plan under § 1329 or seek to obtain relief under Rule 9024. With these possible avenues of relief still available, the appeal is not moot. We thus consider the merits.

### III.  ISSUE

Whether a chapter 13 debtor's voluntary postpetition retirement contributions are excluded from his or her disposable income under § 541(b)(7).

-4-

# IV. STANDARDS OF REVIEW

We review de novo a bankruptcy court's conclusions of law, including statutory interpretations. <u>Simpson v. Burkart (In re Simpson)</u>, 557 F.3d 1010, 1014 (9th Cir. 2009).

# V. DISCUSSION

Our resolution of this case turns on the interpretation of § 541(b)(7)(A), which was added to the list of exclusions from property of the estate in 2005 with the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), Pub. L. No. 109-8, 119 Stat. 23. Section 541(b)(7)(A) provides that property of the estate does not include any amount

> (A) withheld by an employer from the wages of employees for payment as contributions--
>
> (i) to--
>
> (I) an employee benefit plan that is subject to title I of the Employee Retirement Income Security Act of 1974 or under an employee benefit plan which is a governmental plan under section 414(d) of the Internal Revenue Code of 1986;
>
> (II) a deferred compensation plan under section 457 of the Internal Revenue Code of 1986; or
>
> (III) a tax-deferred annuity under section 403(b) of the Internal Revenue Code of 1986;
>
> except that such amount under this subparagraph shall not constitute disposable income as defined in section 1325(b)(2). . . .[3]

Questions of statutory interpretation begin with the plain language of the statute. <u>Lamie v. U.S. Trustee</u>, 540 U.S. 526,

---

[3] This final phrase is referred to as the "hanging paragraph."

-5-

534 (2004). If the statute is clear, the inquiry is at its end, and we enforce the statute on its terms. United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241 (1989). If the plain meaning of the statutory language is not clear, the statute's context within the overall statutory framework should be examined. Davis v. Mich. Dept. of Treasury, 489 U.S. 803, 809 (1989) ("[S]tatutory language cannot be construed in a vacuum. It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.").

As with other provisions contained in BAPCPA, applying statutory interpretation rules to discern Congress's intent in adding § 541(b)(7) is easier said than done. In this case, the statute's placement within § 541 instead of chapter 13 and its reference to disposable income under § 1325(b)(2) in the hanging paragraph reflects its ambiguity. These contextual conundrums have split the courts nationwide. Compare Baxter v. Johnson (In re Johnson), 346 B.R. 256, 263 (Bankr. S.D. Ga. 2006) (holding that § 541(b)(7) excludes all voluntary retirement contributions, both pre and postpetition, from disposable income) and the cases following Johnson with In re Prigge, 441 B.R. 667 (holding § 541(b)(7) does not permit exclusion of postpetition voluntary retirement contributions in any amount when determining disposable income); In re McCullers, 451 B.R. 498, 503-05 (Bankr. N.D. Cal. 2011) (same); Seafort v. Burden (In re Seafort), 669 F.3d 662, 673-74 (6th Cir. 2012) (same). Although none of these decisions are binding on us, we find the Prigge line of cases persuasive. To avoid repetition, we borrow

-6-

heavily from these decisions.

We begin by looking at the language and structure of § 541, which defines property of the estate generally, as well as its relationship to § 1306, which completes the definition of property of the estate for purposes of chapter 13.

Section 541(a)(1) defines property of the estate as including "all legal or equitable interests of the debtor in property as of the commencement of the case" and § 541(a)(6) states that "earnings from services performed by an individual debtor after the commencement of the case" are not brought into the estate. Under the plain reading, "as of the commencement of the case", a debtor's postpetition earnings are not included in property of the estate. However, because this is a chapter 13 case, we cannot ignore the relationship between § 541 and § 1306. Section 1306(a) states:

> Property of the estate includes, in addition to the property specified in section 541 of this title–
>
> . . . .
>
> (2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first.

"Section 1306(a) expressly incorporates § 541. Read together, § 541 fixes property of the estate as of the date of filing, while § 1306 adds to the 'property of the estate' property interests which arise post-petition." In re Seafort, 669 F.3d at 667. It is § 1306(a)(2) which operates to bring the debtor's earnings from postpetition services into his or her estate.

Given this statutory framework, the question then becomes

-7-

what is "excluded" from property of the estate under § 541(b)(7)(A) which also does not constitute disposable income? In answering this question, we keep in mind that statutory provisions are to be read in harmony in the context of the whole statute. Hougland v. Lomas & Nettleton Co. (In re Hougland), 886 F.2d 1182, 1184 (9th Cir. 1989) (citing Davis v. Mich. Dept. of Treasury, 489 U.S. at 809). All parts of a statute are to be read as a whole, and in harmony with one another, and not in conflict. Culver, LLC v. Chiu (In re Chiu), 266 B.R. 743, 747, 750 (9th Cir. BAP 2001), aff'd, 304 F.3d 905 (9th Cir. 2002). In light of these principles, by reading § 541(a)(1) and § 541(b)(7)(A) together, the most reasonable interpretation of § 541(b)(7)(A) is that it excludes from property of the estate only those 401(k) contributions made before the petition date. In re Seafort, 669 F.3d at 673; In re McCullers, 451 B.R. at 503-05; see also In re Prigge, 441 B.R. at 677 n.5 (noting that § 541(b)(7) "seems intended to protect amounts withheld by employers from employees that are in the employer's hands at the time of filing bankruptcy, prior to remission of the funds to the plan.") (citing 5 COLLIER ON BANKRUPTCY, ¶ 541.22(C)[1] (15th ed. rev.)). Otherwise, as noted by the Sixth Circuit in In re Seafort, if "contributions to a qualified retirement plan never constitute property of a bankruptcy estate . . . Congress would not have needed to include an additional provision in § 541(b)(7)(A) stating that such contributions are excluded from disposable income." 669 F.3d at 673.

From here, it follows that "such amount" referred to in the hanging paragraph of § 541(b)(7)(A) means that only prepetition

contributions shall not constitute disposable income. In re McCullers, 451 B.R. at 503-04. As a consequence, we are persuaded that the term "except that" in the hanging paragraph was designed simply to clarify that the voluntary retirement contributions excluded from property of the estate are not postpetition income to the debtor. Id. at 504-05. Finally, to give meaning to the words "under this subparagraph" found in the hanging paragraph, it is reasonable to conclude that "Congress intentionally limited the type of contributions to qualified retirement plans that would be excluded from disposable income, namely those 'under this subparagraph', § 541(b)(7)(A), which in turn governs only those contributions in effect as of the commencement of a debtor's bankruptcy case, per § 541(a)(1)." In re Seafort, 669 F.3d at 673.

We also attach significance to the fact that § 1306(a)(2) makes postpetition earnings of a debtor part of his or her estate but nowhere in chapter 13 are voluntary retirement contributions excluded from disposable income. To the contrary, when Congress amended BAPCPA, it chose to exclude the repayment of 401(k) loans from disposable income in § 1322(f).[4] "Where Congress includes particular language in one section of a statue but omits it in another, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." Keene Corp. v. United States, 508 U.S. 200, 208

[4] This section states that "[a] plan may not materially alter the terms of a loan described in section 362(b)(19) and any amounts required to repay such loan shall not constitute 'disposable income' under section 1325."

(1993). Accordingly, it is likely "that Congress did not intend to treat voluntary 401(k) contributions like 401(k) loan repayments, because it did not similarly exclude them from 'disposable income' within Chapter 13 itself." In re Seafort, 669 F.3d at 672. Simply put, without a clearer direction comparable to the carve out from disposable income for the repayment of retirement loans in § 1322(f), it seems unlikely that Congress intended § 541(b)(7)(A) to bestow a benefit on above-median chapter 13 debtors while their creditors absorbed an even greater loss.

Further support for the Prigge holding comes from other sections in the Code as well. Section 1325(b)(2)(A)(i) states that "disposable income means current monthly income received by the debtor . . . less amounts reasonably necessary to be expended . . . for the maintenance or support of the debtor . . . ." Here, because debtors' income exceeded the state median, the "amounts reasonably needed to be expended" are determined by the "means test" set forth in § 707(b)(2). § 1325(b)(3). Voluntary contributions to 401(k) retirement plans are not mentioned as "reasonable and necessary expenses" under the "means test" set forth in § 707(b)(2)(A) & (B). In re Seafort, 669 F.3d at 672; see also In re Prigge, 441 B.R. at 676 (citing Egebjerg v. Anderson (In re Egebjerg), 574 F.3d 1045, 1052 (9th Cir. 2009) (citing Internal Revenue Manual § 5.15.1.23)). Congress's failure to mention contributions to 401(k) retirement plans as reasonable and necessary expenses in § 707(b)(2) suggests that Congress did not intend § 541(b)(7)(A) to exclude postpetition 401(k) contributions from disposable

-10-

income.

We also agree that the Ninth Circuit's decision in In re Egebjerg, 574 F.3d 1045, which was heavily relied upon by the Prigge court, lends support to the interpretation discussed above notwithstanding the nuanced difference of the issues. There, the Ninth Circuit rejected the chapter 7 debtor's argument that his 401(k) loan repayments qualified as an "other necessary expense" for purposes of applying the means test under § 707(b)(2). In doing so, the court noted that "[w]hen it introduced the means test, Congress provided, by reference to the IRS guidelines, specific guidance as to what qualifies as a necessary expense for the purposes of applying that test." 574 F.3d at 1052. The 401(k) loan repayments were neither listed in any of fifteen categories as expenses which may be considered necessary nor were the repayments of the same kind and character of the expenses allowed elsewhere in guidelines. Id. at 1051-52. The court also noted that "the IRS guidelines themselves provide that '[c]ontributions to voluntary retirement plans are not a necessary expense.'" Id. at 1052. Although the IRS guidelines do not prevail over a plain reading of § 541(b)(7)(A), they do provide "specific guidance that [401(k) contributions] are not a necessary expense, in any amount". In re Prigge, 441 B.R. at 676.

## VI.  CONCLUSION

For all these reasons, we hold that § 541(b)(7) does not authorize chapter 13 debtors to exclude voluntary postpetition retirement contributions in any amount for purposes of calculating their disposable income. Accordingly, we AFFIRM.

-11-