FILED

OCT 16 2020

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**ORDERED PUBLISHED**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

In re:
PHILLIP JOHNNY RODRIGUEZ and
JENNIFER LYNN RODRIGUEZ,
        Debtors.

---

PHILLIP JOHNNY RODRIGUEZ;
JENNIFER LYNN RODRIGUEZ,
        Appellants,

v.

MARTHA G. BRONITSKY, Chapter 13
Trustee,

        Appellee.

BAP No. NC-20-1085-TaBG

Bk. No. 19-42408

**OPINION**

Appeal from the United States Bankruptcy Court
for the Northern District of California
Charles Novack, Chief Bankruptcy Judge, Presiding

APPEARANCES:
Carl R. Gustafson of Lincoln Law, LLP argued for appellants; Nima
Ghazvini argued for appellee

Before: TAYLOR, BRAND, and GAN, Bankruptcy Judges.

TAYLOR, Bankruptcy Judge:

Chapter 13[1] trustee Martha G. Bronitsky objected to confirmation of a

chapter 13 plan proposed by above-median income debtors Phillip and

---

[1] Unless specified otherwise, all chapter and section references are to the
Bankruptcy Code, 11 U.S.C. § 101–1532, and all "Rule" references are to the Federal
Rules of Bankruptcy Procedure.

Jennifer Rodriguez because, in calculating their disposable income under § 1325(b), they claimed monthly vehicle operation expenses over the amount specified in the applicable Local Standards published by the Internal Revenue Service ("IRS").

Facing a tentative ruling sustaining the objection and before the hearing on the objection, Debtors reduced this expense request and amended their plan to increase their dedicated income accordingly. Thus, the bankruptcy court entered two orders, one sustaining the plan objection and one confirming the amended plan.

Debtors appealed, contending that the bankruptcy court erred when it prohibited them from claiming vehicle operation expenses over the amount specified in the Local Standards. We disagree, and we AFFIRM.

## FACTS[2]

Debtors commenced their chapter 13 bankruptcy case and concurrently filed their bankruptcy schedules and a chapter 13 plan ("Original Plan"). At the time, Debtors owned three vehicles and a motor home, had a combined monthly income of $13,135.00, and alleged monthly transportation expenses (exclusive of car payments) of $1,000.00.

As part of their petition, Debtors completed Official Bankruptcy

---

[2] We exercise our discretion to take judicial notice of documents electronically filed in the bankruptcy case. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

Forms 122C-1 and 122C-2[3] to calculate their current monthly income and disposable income, respectively. These forms are collectively referred to as the "means test" and are used to determine the amount of disposable income that a chapter 13 debtor is able to pay to unsecured creditors.

Form 122C-2 directed Debtors to take the IRS's standardized deductions for certain expenses. Debtors thus claimed $424.00 as set forth in the IRS's Local Standards for vehicle operation expenses in line 12. In addition, in line 43—which allows debtors to list additional expenses if "special circumstances" justified the expense and the debtor had "no reasonable alternative" to incurring the expense—Debtors listed $500 in "extraordinary commute expense (husband)."

Based on their disposable income as calculated in their initial means test, the Original Plan proposed to pay $300 per month to their unsecured creditors. The Trustee objected; she asserted that they improperly reduced disposable income by including the special circumstances vehicle operating expense deduction. She argued that Debtors could not circumvent the Local Standards by simply categorizing ordinary work travel as a special circumstance. She concluded that Debtors failed to commit all of their projected disposable income to fund their Original Plan, as required by

---

[3] Because Debtors reported $188,986.08 of annualized income on their Form 122C-1, which is well above the $114,813.00 median income for their household size in California, they were required under § 1325(b)(3) to calculate their disposable income in Form 122C-2.

§ 1325(b)(1)(B).

Debtors initially responded by amending their means test to delete the special circumstance deduction and to increase their vehicle operation expense from $424 to $924. But thereafter the bankruptcy court issued a tentative order denying confirmation of the Original Plan. It concluded that a plain reading of §§ 707(b)(2)(A)(ii)(I) and 1325(b)(3) did not authorize deviation from the Local Standards when calculating disposable income. Rather, it reasoned, the means test required a mechanical application of the National and Local Standards. The tentative ruling permitted Debtors to file a supplemental memorandum to contest the tentative ruling and warned that, if they failed to do so, the tentative ruling would become the final ruling.

Debtors filed a supplemental memorandum arguing that deviation from a mechanical application of the means test "as justice requires" was appropriate and that the IRS's Financial Analysis Handbook Part 5, Chapter 15, Section 1 ("Handbook") of the Internal Revenue Manual ("Manual") makes clear than the Standards are guidelines, rather than strict figures requiring adherence.[4] But they also filed an amended means

---

[4] The Manual and its Standards table exhibits are web-based and can respectively be found at https://www.irs.gov/irm/part5/irm_05-015-001 and https://www.irs.gov/businesses/small-businesses-self-employed/collection-financial-standards. All Internet materials referenced herein were last visited on October 13, 2020. The National Standards establish expenses for food, housekeeping supplies, apparel and services, personal care products and services, out-of-pocket health care costs, and miscellaneous expenses. The Local Standards establish expenses for housing, utilities, and transportation.

test to decrease their requested vehicle operation expense to $424 and amended the Original Plan (as so modified, the "Amended Plan") to increase their plan payments.

At the final confirmation hearing, Debtors' counsel continued to argue that the Standards were nothing more than discretionary guidelines. But the bankruptcy court disagreed and entered an order sustaining the Trustee's objection to the Original Plan ("Objection Order"), followed by an order confirming the Amended Plan ("Confirmation Order"). Debtors appealed.

## JURISDICTION

Subject to our jurisdictional discussion below, the bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A), (L), and (O) and we had jurisdiction over the appeal under 28 U.S.C. § 158.

## ISSUES

1. Does the Panel have jurisdiction over the appeal?

2. Did the bankruptcy court err as a matter of law in sustaining the Trustee's objection to confirmation of Debtors' Original Plan?

## STANDARD OF REVIEW

We review jurisdictional issues, including questions of mootness and standing, de novo. *Hunt v. Imperial Merch. Servs., Inc.*, 560 F.3d 1137, 1141 (9th Cir. 2009)*; Aheong v. Mellon Mortg. Co. (In re Aheong)*, 276 B.R. 233, 238 (9th Cir. BAP 2002). We also review plan confirmation issues requiring

5

only statutory interpretation de novo. *Villanueva v. Dowell (In re Villanueva)*, 274 B.R. 836, 840 (9th Cir. BAP 2002).

## DISCUSSION

**Jurisdiction**

Before reaching the merits of Debtors' appeal, we must determine whether it is properly before us. The Trustee argues that we lack jurisdiction to hear the appeal because Debtors only specifically stated in their notice of appeal that they were appealing from the interlocutory Objection Order. The Trustee alternatively argues that we lack jurisdiction on standing and mootness grounds because Debtors resolved their controversy with the Trustee by amending their means test and filing the Amended Plan. We reject both arguments.

We have jurisdiction under 28 U.S.C. § 158(a) and (b) to hear appeals from final orders and, with our leave, interlocutory orders of the bankruptcy court. Whereas an order granting confirmation of a chapter 13 plan is considered a final order, an order denying confirmation is not. *Bullard v. Blue Hills Bank*, 135 S. Ct. 1686, 1692 (2015). However, the finality defect of an interlocutory order can be "cured" when another order is entered that fully and finally disposes of the matter. *Parks v. Drummond (In re Parks)*, 475 B.R. 703, 706 (9th Cir. BAP 2012). Such is the case here. The interlocutory Objection Order became final given the subsequently entered Confirmation Order.

But the Trustee points to further potential problems; Debtors' notice of appeal only explicitly referenced the Objection Order as the subject of appeal. Nevertheless, it "is well settled that a mistake in designating the judgment appealed from should not result in loss of the appeal as long as the intent to appeal from a specific judgment can be fairly inferred from the notice and the appellee is not misled by the mistake." *Munoz v. Small Bus. Admin.*, 644 F.2d 1361, 1364 (9th Cir. 1981).

Here, all of Debtors' submissions in this appeal made it clear that they are also challenging the Confirmation Order. Specifically, their notice of appeal attached both orders, their statement of issues asserted error in the bankruptcy court's confirmation of the Amended Plan, and their opening brief stated that entry of the Confirmation Order rendered the Objection Order final and appealable. Further, Debtors' asserted scrivener's error in failing to explicitly appeal from the Confirmation Order did not prevent the Trustee from fully briefing the propriety of both the bankruptcy court's denial of confirmation of the Original Plan **and** its confirmation of the Amended Plan. Because we interpret notices of appeal liberally and because the Trustee has not been prejudiced or misled by the contents of Debtors' notice of appeal, we will construe the notice of appeal as covering both orders. *See Drummond v. Luedtke (In re Luedtke)*, 508 B.R. 408, 412 n.3 (9th Cir. BAP 2014).

The Trustee argues, however, that even if we consider the appeal as

7

pertaining to both orders, Debtors mooted the issue on appeal by amending their means test and filing the Amended Plan. We disagree.

Constitutional mootness is derived from Article III of the Constitution, which provides that the exercise of judicial power depends on the existence of a live case or controversy. *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974). The mootness doctrine applies when events occur that make it impossible for the appellate court to affect the rights of the litigants. *Id.* Thus, if effective relief is impossible, we must dismiss for lack of jurisdiction. *United States v. Arkison (In re Cascade Rds., Inc.)*, 34 F.3d 756, 759 (9th Cir. 1994). This doctrine "subsists through all stages of federal judicial proceedings, trial and appellate." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). And, to have standing to appeal a bankruptcy court order, an appellant must be a "person aggrieved" who was "directly and adversely affected pecuniarily by an order of the bankruptcy court." *Fondiller v. Robertson (In re Fondiller)*, 707 F.2d 441, 442-43 (9th Cir. 1983).

Here, the controversy surrounding Debtors' asserted entitlement to the augmented vehicle operation expense in their disposable income calculation continues, and Debtors are aggrieved by it. They did not waive this claim by amending their means test or the Original Plan. Rather, they were forced, over their expressed objection in their supplemental memorandum, to propose the Amended Plan with provisions that they disputed in order to obtain appellate review of the bankruptcy court's

8

impending adverse ruling. Their chosen path to expeditious appellate review, proposing an undesirable plan, has been endorsed by the Ninth Circuit and this Panel. *See, e.g., In re Sisk*, 962 F.3d 1133, 1141 (9th Cir. 2020); *Giesbrecht v. Fitzgerald (In re Giesbrecht)*, 429 B.R. 682, 687-88 (9th Cir. BAP 2010).

Because Debtors filed the Amended Plan under protest, the required increase in plan payments in the Amended Plan is material and prejudicial to them, making them aggrieved parties with standing to pursue this appeal. *See In re Sisk*, 962 F.3d at 1143 n.5. And we can provide them with effective relief "because if we were to reverse on the merits, debtors could file a motion to modify their plan under § 1329 or seek to obtain relief under Rule 9024. With these possible avenues of relief still available, the appeal is not moot." *In re Parks*, 475 B.R. at 706.

**Merits**

Under § 1325(b)(1), if a trustee objects to confirmation of a plan, then the bankruptcy court may not approve the plan unless it pays unsecured creditors in full or pays all of the debtor's "projected disposable income" to unsecured creditors during the life of the plan. Here, the Trustee objected to the Original Plan which did not pay creditors in full; she argued that Debtors erroneously calculated and, thus, understated their "disposable income"—a term defined in § 1325(b)(2) as a debtor's current monthly income (with exceptions not relevant here) less reasonably necessary

9

expenses.

**Above-median-income debtors must use the IRS's Standards to calculate expenses.**

Before the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. 109–8, April 20, 2005, 119 Stat. 23 ("BAPCPA"), the Bankruptcy Code gave bankruptcy courts substantial discretion to consider a debtor's particular circumstances in determining their reasonably necessary expenses. *See Drummond v. Welsh (In re Welsh)*, 711 F.3d 1120, 1130 (9th Cir. 2013). But BAPCPA replaced this discretion with a statutory formula, the "means test," for assessing an above-median-income debtor's ability to pay. *Id.*

The means test is set forth in § 707(b)(2)(A)(ii) and is made applicable by § 1325(b)(3). It provides in relevant part that:

> [t]he debtor's monthly expenses **shall be** the debtor's applicable monthly expense **amounts specified under the** National Standards and **Local Standards**, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief . . . .

§ 707(b)(2)(A)(ii)(I) (emphasis added). Thus, the means test mandates that an above-median-income debtor's expenses in certain categories be calculated by the "expense amounts specified under the National Standards and Local Standards" in lieu of actual living expenses.

The capitalized terms "National Standards" and "Local Standards" in § 707(b)(2)(A)(ii)(I) refer to the "**tables** that the IRS prepares listing standardized expense amounts for basic necessities."[5] *In re Luedtke*, 508 B.R. at 413 (emphasis added) (quoting *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 66 (2011)). Contextually, the tables are exhibits to the Manual and are published to assist IRS agents in calculating a taxpayer's ability to pay delinquent taxes. *Ransom*, 562 U.S. at 66. And we acknowledge that the Manual itself merely provides guidelines to IRS agents and lacks the force of law. *See* 26 U.S.C. § 7122(d)(1) (the enabling statute); *Fargo v. Comm'r*, 447 F.3d 706, 713 (9th Cir. 2006) (citing *Marks v. Comm'r*, 947 F.2d 983, 986, n.1 (D.C. Cir. 1991)), which held "the provisions of the manual are directory rather than mandatory, are not codified regulations, and clearly do not have the force and effect of law."). But once Congress expressly incorporated the Standards into § 707(b)(2)(A)(ii)(I), this portion of the Manual was elevated and made authoritative in the chapter 13 context; the Standards largely dictate which expenses are reasonably necessary for above-median-income debtors and, hence, may be subtracted from their current monthly income to calculate their disposable income. *See In re Luedtke*, 508 B.R. at 413.

---

[5] Debtors argue that the Standards are much more than just the tables, but they fail to cite any supporting authority.

11

**The Court cannot rely on the Manual if it is at odds with the Code.**

Notwithstanding the mandatory language of § 707(b)(2)(A)(ii)(I), which requires use of the expense amounts specified under the Standards, Debtors base their entitlement to an enhanced vehicle operation expense deduction on two manual provisions designed to guide IRS agents in their highly discretionary collection process. The first provides that "[i]f it is determined a standard amount [in the tables] is inadequate to provide for a specific taxpayer's basic living expenses, allow a deviation." Manual § 5.15.1.8(6).[6] The second provides that "[i]f a taxpayer claims higher amounts of operating costs because he commutes long distances to reach his place of employment, he may be allowed greater than the standard. . . [as it] would generally meet the production of income test." *Id.* § 5.15.1.10(1)b.[7]

While we agree with Debtors that the Supreme Court in *Ransom* determined that it was appropriate to consult the Manual guidelines in interpreting the Standards, we note that it also cautioned that the guidelines could not control the means test outcome to the extent they were at odds with the language of the Bankruptcy Code:

> Although the statute does not incorporate the IRS's guidelines, courts may consult this material in interpreting the National

---

[6] https://www.irs.gov/irm/part5/irm_05-015-001#idm140164197759840.

[7] https://www.irs.gov/irm/part5/irm_05-015-001#idm140164197698064.

12

and Local Standards; after all, the IRS uses those tables for a similar purpose–to determine how much money a delinquent taxpayer can afford to pay the Government. The guidelines of course cannot control if they are at odds with the statutory language. But here, the Collection Financial Standards' treatment of the car-ownership deduction reinforces our conclusion that, under the statute, a debtor seeking to claim this deduction must make some loan or lease payments.

562 U.S. at 72-73; *see also Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 476 (1992) ("[A] reviewing court should not defer to an agency position which is contrary to an intent of Congress expressed in unambiguous terms."); *In re Luedtke*, 508 B.R. at 411, 415. And, when the language of a statute is plain, courts must enforce the statute according to its terms unless doing so would produce absurd results. *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004). In this case, as discussed below, we find that § 707(b)(2)(A)(ii)(I) is plain and that enforcement of the statute by its terms would not produce absurd results. Thus, there is no need to refer to the Manual to determine how much Debtors may claim as a vehicle operation expense.

**Under a plain reading of § 707(b)(2)(A)(ii), Debtors may only claim the vehicle operation expense amount listed in the Local Standards tables.**

Section 707(b)(2)(A)(ii) utilizes both the term "applicable monthly expense amounts specified under the National Standards and Local Standards" and the term "actual expenses." A predominant maxim of

statutory construction is "that '[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" *Duncan v. Walker*, 533 U.S. 167, 173 (2001) (quoting *Bates v. United States*, 522 U.S. 23, 29-30 (1997)); *see also In re Sisk*, 962 F.3d at 1148. Under this maxim, a term that is intended to mean one thing should, upon reoccurrence elsewhere, mean the same thing in the same act or statute.

Debtors' view—in which a bankruptcy court must disregard the Standards if they fail to adequately equate to actual expenses—may be consistent with the Manual's instructions for the collection process, but it ignores the language of the statute and this rule of statutory interpretation. In Debtors' view, "applicable monthly expense amounts specified under the National Standards and Local Standards"sometimes means actual expenses. But if Congress meant "actual expenses" in this context, it could have and should have simply used those words instead of importing the amounts specified in the Standards. It demonstrated an ability to do so in the latter part of the same statute. *See* § 707(b)(2)(A)(ii)(I), (II), (III), (IV), and (V). We cannot assume that the statute's clear language is an example of mere Congressional caprice.

When unpacking the words at issue in the term "applicable monthly expense amounts specified under the [Standards]", the Supreme Court in

14

*Ransom* held that "applicable" does not mean "actual." Further, no one disputes that the type of expense Debtors seek to deduct qualifies as vehicle operation expenses. And the word "specify" in the statute means "to name or state explicitly or in detail," Webster's New Collegiate Dictionary 2187 (2002), and it modifies the term "amounts." As the bankruptcy court noted, the only relevant explicit amounts found in the Manual are in the tables comprising the Standards themselves. Section 707(b)(2)(A)(ii)(I) thus requires debtors to use the exact numerical values contained in the Local Standards for their vehicle operation expense—no more and no less.

Our plain meaning interpretation of the statute is supported by Form 122C-2.[8] When the Advisory Committee on Bankruptcy Rules promulgated the form, it recognized that § 707(b)(2)(A)(ii)(I) requires debtors to calculate their reasonably necessary expenses according to the numerical values in the Standards even if the values conflict with the amounts of their actual expenses. As relevant to this appeal, the form instructs debtors to "[d]educt the expense amounts set out in lines 6-15 regardless of your actual expense.

---

[8] Form 122C-2 was approved by the Judicial Conference of the United States (a national policy-making body of judges chaired by the Chief Justice of the United States, as enacted and subsequently amended after the passage of BAPCPA. *See* 28 U.S.C. § 331 and Rule 9009(a). The form was drafted to assist practitioners in calculating disposable income. The Official Bankruptcy Forms, together with the Rules, govern procedures in cases under the Bankruptcy Code and are presumptively valid. *See* Rules 1001 and 9009. In this regard, Form 122C-2 is akin to an advisory opinion as to how § 707(b)(2)(A)(ii)(I) should be interpreted.

In later parts of the form, you will use some of your actual expenses if they are higher than the standards." Then line 12 for vehicles operation expenses instructs debtors to, "[u]sing the IRS Local Standards and the number of vehicles for which [they] claim the operating expenses, fill in the *Operating Costs* that apply for [their] Census region or metropolitan statistical area." Section 707(b)(2)(A)(ii)(I) should be interpreted in a way that harmonizes and gives meaning to all of its sub-parts. We believe our interpretation of the statute accomplishes this and that Form 122C-2 supports this view.

**Our statutory interpretation does not lead to absurd results.**

Yet Debtors urge against interpreting the statute as we do; they argue that strict adherence to the numerical values in the Standards tables would lead to absurd results. We disagree.

True, the Supreme Court in *Ransom* recognized that using a standardized approach to calculate disposable income "[is] by [its] nature over- and under-inclusive." *Ransom*, 562 U.S. at 78. It also noted, however, that: "[i]n eliminating the pre-BAPCPA case-by-case adjudication of above-median-income debtors' expenses, on the ground that it leant itself to abuse, Congress chose to tolerate the occasional peculiarity that a brighter-line test produces." *Id.* While we acknowledge that the means test may lead to over- or under-inclusive results with respect to particular expenses, it does not necessarily yield absurdly over- or under-inclusive

16

assessments of a debtor's overall expenses. In the Debtors' case, the means test arguably leads to an under-inclusive assessment of their vehicle operation expenses. But to the extent Debtors take advantage of expense amounts in the Standards that exceed their other actual expenses, the means test calculation may, on balance, either reflect or exceed their actual expenses overall. By incorporating the IRS's detailed series of average national and local living expenses, the means test is designed to produce relatively reliable **estimates** of a debtor's overall reasonably necessary expenses.

Further, if a debtor is, for example, a long-haul trucker or Uber driver, § 707(b)(2)(B) may allow additional expenses based on "special circumstances." Those costs of vehicle operation are business expenses – not commuting costs.

In any event, it is no longer within the bankruptcy courts' discretion to delve into every debtor's finances to ensure that they paint a complete and accurate picture of all their expenses in calculating their disposable income. The bankruptcy courts are not tasked with policing compliance with the means test unless and until a chapter 13 trustee or unsecured creditor objects to a plan. § 1325(b); *see also In re Sisk*, 962 F.3d at 1146 (holding a § 1325(b) plan requirement only applied if a trustee or unsecured creditor objected to plan confirmation). As unsecured creditors often lack the resources and incentive to do so, trustees are frequently de

17

facto gatekeepers to the bankruptcy court's adjudication of means test issues. And in this way, § 1325(b) does not so much eliminate discretion as it redirects discretion from bankruptcy courts to chapter 13 trustees.

We believe this shift in discretion does not generate absurd results. Chapter 13 trustees are uniquely suited for this undertaking. On the one hand, their primary duty is to serve the interests of creditors. *Andrews v. Loheit (In re Andrews)*, 49 F.3d 1404, 1407 (9th Cir. 1995). On the other hand, they have a statutory duty to advise and assist debtors in plan performance, short of giving legal advice. § 1302(b)(4). These roles converge when trustees endeavor both to ensure that debtors dedicate all available funds to plan payments while also providing debtors with financial advice on budgeting issues to end cycles of poor financial judgment. *See In re Brown*, 170 B.R. 362, 366 (Bankr. S.D. Ohio 1994); Keith M. Lundin, Lundin on Chapter 13, § 53.5, at 3, LundinOnChapter13.com (last visited October 15, 2020). In doing so, trustees can view a debtor's financial picture in a holistic fashion. They can recommend budgetary adjustments enhancing repayment of creditors. When their recommendations are rebuffed, § 1325(b) provides them with a tool to attain bankruptcy court intervention on a means test line-item basis. But trustees can also be pragmatic, overlooking excess in one area where it is balanced by belt-tightening in another or where other real world concerns establish that creditors benefit from a lack of objection. Put bluntly, a

chapter 13 trustee need not be a sumpsimus.[9]

**Our statutory interpretation is consistent with binding precedent.**

Not only does our plain language interpretation of
§ 707(b)(2)(A)(ii)(I) not lead to absurd results, it is consistent with binding
authority. While the Supreme Court in *Ransom* consulted the Manual when
interpreting the Standards, it did so to "reinforce" its conclusion, based on
sound principles of statutory construction, that taking the deduction at
issue would be improper in the first instance. *Ransom*, 562 U.S. at 72-73. It
did not use the Manual to interpret a straightforward numerical value in
the tables. As explained above, *Ransom* forbids following the Manual
guidelines where, as here, they depart from the clear language of the
Bankruptcy Code. *Id.* at 72.

We also believe our reading of § 707(b)(2)(A)(ii)(I) is in accord with
the following dicta in *Ransom*:

> Although the expense amounts in the Standards apply only if
> the debtor incurs the relevant expense, the debtor's
> out-of-pocket cost may well not control the amount of the
> deduction. **If a debtor's actual expenses exceed the amounts
> listed in the tables, for example, the debtor may claim an**

---

[9] To truly assess whether deviation from the means test is appropriate in one area, the bankruptcy court cannot limit its inquiry to the specific category in dispute. It often would need an evidentiary hearing and evaluative process that would allow it to fully understand all the economics of the debtor's household. Arguably, the questioning of the household's choices should be extensive enough to duplicate the insight gained by the trustee through the 341(a) process and related document review.

**allowance only for the specified sum, rather than for his real expenditures**. For the Other Necessary Expense categories, by contrast, the debtor may deduct his actual expenses, no matter how high they are.

*Id.* at 75-76 (emphasis added). We treat such dicta with great deference. *United States v. Baird*, 85 F.3d 450, 453 (9th Cir. 1996). It strengthens our convictions that Debtors misread *Ransom* and that the bankruptcy court properly applied the means test.

We also disagree with Debtors' reading of our decision in *Luedtke*, 508 B.R. 408. In *Luedtke*, we reversed a bankruptcy court that allowed above-median-income debtors to augment their vehicle operation expense with the IRS's $200 "older vehicle operating expense." *Id.* at 416. We determined that the expense was inapplicable because it is not found in the Local Standards table or the Handbook, which "identif[ies] and interpret[s] those standards." *Id.* at 414. Rather, it is only mentioned in the Manual at Part 5, Chapter 8, which is not incorporated in either the Standards or the Handbook. *Id.* But nothing in our decision departs from *Ransom*'s clear instruction that bankruptcy courts may use the Handbook as relevant and persuasive authority **only to the extent** it does not conflict with the language of the Bankruptcy Code. *See id.* at 415. Here, conflict arises.

Likewise, we disagree with Debtors that the Supreme Court's decision in *Hamilton v. Lanning*, 560 U.S. 505 (2010), required the bankruptcy court to deviate from its mechanical application of the means

20

test. The issue before the Supreme Court in *Lanning* was whether projected disposable income should always be a strict calculation based on the debtor's current monthly income and expenses during the six-month period before bankruptcy (*i.e.*, the "mechanical" approach) or whether a bankruptcy court may take into account the particular circumstances of the debtor's finances for which the mechanical approach would not account (*i.e.*, the "forward-looking" approach). In adopting the forward-looking approach, the Supreme Court stated that bankruptcy courts "may account for changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation." *Id.* at 524. In so holding, the Supreme Court noted that bankruptcy courts must nevertheless "begin by calculating disposable income and that in most cases nothing more is required. It is only in the unusual cases that a court may go further and take into account other known or virtually certain information about the debtor's future income or expenses." *Id.* at 519.

Thus, under *Lanning*, a bankruptcy court has the discretion to adjust the projected disposable income calculation in Form 122C only when there has been changes in a debtor's financial situation. Absent a change, *Lanning* has no bearing. If it did, *Lanning* would in effect require that courts add to the end of § 707(b)(2)(A)(ii)(I) the words "or the actual expenses, if higher." The Supreme Court, in actual effect, recognized that Congress chose not to include such language in the statute. We therefore read *Lanning* as only

applying when it is known or virtually certain that changes in the debtor's income or expenses will occur after the otherwise required period for calculating disposable income. Here, Debtors presented no evidence of such changes in their financial situations. Accordingly, *Lanning* is not germane to the analysis.[10]

## CONCLUSION

Based on the foregoing, we see no error in the bankruptcy court's conclusion that Debtors' vehicle operation expense was limited to the numerical value specified in the Local Standards table. We AFFIRM.

---

[10] Nor do we agree with Debtors that there is any significance in the fact that the bankruptcy court's ruling departed from its prior memorandum decision in another case, *In re De Lara*, No. 19-41231, slip op. (Bankr. N.D. Cal. Oct. 7, 2019). While as a general matter "it is wise judicial policy to adhere to rules announced in earlier cases," "[w]hen the prior court is the same as the subsequent court, the general rule is that precedent is not binding, even though a court may give great weight to its own prior decisions." 18 Moore's Federal Practice § 134.02[1][a] (Matthew Bender 3d ed. 2020).