**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

In re: JORDEN MARIE SALDANA,

*Debtor.*

JORDEN MARIE SALDANA,

*Appellant*,

v.

MARTHA G. BRONITSKY, Chapter 13 Trustee,

*Appellee.*

No. 23-15860

D.C. No. 5:22-cv-06223-BLF

OPINION

Appeal from the United States District Court
for the Northern District of California
Beth Labson Freeman, District Judge, Presiding

Argued and Submitted May 15, 2024
San Francisco, California

Filed November 22, 2024

Before: Sidney R. Thomas, Consuelo M. Callahan, and
Gabriel P. Sanchez, Circuit Judges.

Opinion by Judge Sidney R. Thomas;
Dissent by Judge Consuelo M. Callahan

**SUMMARY**[*]

**Bankruptcy**

Reversing the district court's judgment affirming the bankruptcy court and remanding, the panel held that a debtor's voluntary contributions to employer-managed retirement plans do not constitute disposable income in a Chapter 13 bankruptcy.

The debtor voluntarily filed for Chapter 13 bankruptcy to reorganize her finances and seek relief from unpaid taxes and other unsecured debts. In calculating her disposable income, she excluded qualified retirement contributions. The panel concluded that pursuant to the plain language of the "hanging paragraph" set forth in 11 U.S.C. § 541(b)(7)—which reads "except that such amount under this subparagraph shall not constitute disposable income as defined in section 1325(b)(2)"—debtors can exclude any amount of their voluntary retirement contributions to employer-managed plans from their disposable income calculation under Chapter 13. The panel further held that this interpretation is consistent with the canons of statutory construction and is consistent with the conclusions of the majority of bankruptcy courts that have considered this issue.

Judge Callahan dissented from the majority's conclusion that voluntary contributions to employer-managed retirement plans do not constitute disposable income in a Chapter 13 bankruptcy. She disagreed that the hanging

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

paragraph is unambiguous when it has spawned at least four different judicial interpretations, and concluded that the application of canons of statutory construction does not resolve the ambiguity in a compelling manner. Judge Callahan would find the Sixth Circuit's approach, which excludes from disposable post-petition income a debtor's retirement contributions that are consistent with her contributions for six months prior to bankruptcy, to most closely conform to the other provisions of bankruptcy law.

**COUNSEL**

Michael J. Primus (argued), Law Offices of Michael J. Primus, Hercules, California, for Appellant.

Brent D. Meyer (argued), Meyer Law Group LLP, San Francisco, California; Sarah R. Velasco, Martha G. Bronitsky, Chapter 13 Trustee, Hayward, California; for Appellee.

Christina L. Henry, Seattle Consumer Justice PS, Seattle, Washington, for Amici Curiae The National Consumer Bankruptcy Rights Center and The National Association of Consumer Bankruptcy Attorneys.

## OPINION

S.R. THOMAS, Circuit Judge:

In this appeal, we consider whether voluntary contributions to employer-managed retirement plans constitute disposable income in a Chapter 13 bankruptcy. We conclude that such contributions are not disposable income. We reverse the judgment of the district court.

The bankruptcy court had jurisdiction to hear Jorden Marie Saldana's claims pursuant to 28 U.S.C. § 157(b)(1), (2)(L). The district court had jurisdiction to hear Saldana's appeal of two orders of the bankruptcy court. 28 U.S.C. §§ 158(a)(1), 1334. Although the order sustaining the Trustee's objection to her Chapter 13 plan was interlocutory, it became final and appealable once the bankruptcy court entered the confirmation order of Saldana's Third Amended Plan. 28 U.S.C. §§ 158(a)(1), 1334; *Bullard v. Blue Hills Bank*, 575 U.S. 497, 502–03 (2015); *In re Sisk*, 962 F.3d 1133, 1141 (9th Cir. 2020). We have jurisdiction to hear the appeal of the district court's order. 28 U.S.C. § 158(d)(1).

We review *de novo* the district court's decision of an appeal from bankruptcy court. *Elliott v. Pac. W. Bank* (*In re Elliott*), 969 F.3d 1006, 1009 (9th Cir. 2020). We review the bankruptcy court's decision with the same standard of review as the district court. *Northbay Wellness Grp., Inc. v. Beyries*, 789 F.3d 956, 959 (9th Cir. 2015). Here, as with any question of statutory interpretation, we review the bankruptcy court's interpretation of the Bankruptcy Code *de novo*. *Vibe Micros Inc. v. SIG Cap., Inc.* (*Matter of 8Speed8, Inc.*), 921 F.3d 1193, 1195 (9th Cir. 2019).

## I

Jorden Saldana voluntarily filed for Chapter 13 bankruptcy on April 13, 2022.  Saldana is single with no dependents.  She is employed as a surgical technician earning $8,481 each month, or about $101,776 annually. Saldana declared bankruptcy to reorganize her finances and seek relief from around $8,549 in unpaid taxes and $56,045 in other unsecured debts.  In her initial petition, she calculated her monthly disposable income (a statutory calculation of how much Saldana should commit to repayment) to be $115.90.  Because Saldana is an above-median income debtor, she calculated her disposable income by taking various statutory deductions and exclusions from her disposable income.  Among other exclusions, she subtracted qualified retirement contributions of $601 from her monthly income to reach her disposable income.  In Saldana's first plan, submitted alongside her petition, she committed to make monthly payments of $300 for 60 months, meaning she would not repay her unsecured creditors (a 0% distribution).

The Chapter 13 Trustee objected to Saldana's first plan because it did not devote all of Saldana's disposable income to repaying unsecured creditors.  In her objection, the Trustee requested more documentation about Saldana's retirement exclusion.  In response, Saldana filed a sworn declaration stating that she "reduced [her] voluntary retirement shown as TSA Fidelity EE on [her] paychecks to 6% which equates to $484 per months [sic] in order to make ends meet and perform [her] plan obligations."

The Trustee again filed an objection to Saldana's plan because it did not devote all her disposable income to repaying unsecured creditors and again requested more

details on her retirement contributions and loan repayments. Saldana filed a declaration which showed she paid $601 each month towards two retirement loans: $355 each month towards a $12,000 retirement loan with a remaining term of 26 months, and $246 each month towards a $7,000 retirement loan with a remaining term of 31 months. This declaration revealed two mistakes: Saldana's loan repayments were not amortized over the life of her Chapter 13 plan (five years), and her exclusion failed to account for her voluntary retirement contributions of $484 each month. Saldana filed an amended means test, which showed her retirement contributions as $747 each month: the aforementioned $484 in contributions to her retirement plan suggesting an amortized retirement loan repayment of $263 each month. Contributing this amount resulted in a negative disposable income calculation, meaning Saldana would not repay her unsecured creditors over the course of the plan. The Trustee again filed an objection arguing that the Bankruptcy Code did not permit Saldana to exclude voluntary retirement contributions from her disposable income. In her objection, the Trustee calculated Saldana's retirement loan amortization differently: $281 for retirement loan repayments and $456 in voluntary retirement contributions.

The Bankruptcy Court for the Northern District of California held a confirmation hearing on the initial plan and sustained the Trustee's objection. The bankruptcy court found persuasive the Bankruptcy Appellate Panel for the Ninth Circuit's decision in *Parks v. Drummond* (*In re Parks*), which held that voluntary retirement contributions are disposable income in a Chapter 13 bankruptcy. 475 B.R. 703 (B.A.P. 9th Cir. 2012).

Because the bankruptcy court sustained the Trustee's objection to Saldana's voluntary retirement contributions, Saldana updated her disposable income to only reflect her retirement loan repayment ($281 each month), and filed another amended plan.  This plan would repay approximately 30% of her debts to unsecured creditors. After revising some technical errors, Saldana filed her third amended plan.  The bankruptcy court confirmed this plan. Saldana filed a notice of appeal of the bankruptcy court's confirmation order, and the court's earlier order sustaining the Trustee's objection to her voluntary retirement contributions.  Saldana requested the bankruptcy court to certify a direct appeal to the Ninth Circuit, but the bankruptcy court denied her request.

The district court affirmed the bankruptcy court.  After surveying the various approaches to the question, the district court also found the Bankruptcy Appellate Panel's decision in *Parks* persuasive, and held that voluntary retirement contributions are disposable income, and must be used to repay unsecured creditors.  This timely appeal followed.

## II

The sole question in this appeal is whether voluntary contributions to an employer-managed retirement plan are considered disposable income in a Chapter 13 bankruptcy.

## A

A Chapter 13 bankruptcy is designed for individual debtors with a regular income.  8 Collier on Bankruptcy ¶ 1300.01–02 (16th ed. 2024).  In a Chapter 13 bankruptcy case, an individual debtor can discharge their debts to unsecured creditors if they commit to paying back those creditors from their future income for three to five years via

a repayment plan. 11 U.S.C. §§ 1322, 1325, 1328. When an individual petitions for Chapter 13 bankruptcy (the petition date), the debtor must declare their "assets and liabilities" and "a schedule of current income and expenditures." Fed. R. Bankr. P. 1007(b). The debtor's property forms the bankruptcy estate. 11 U.S.C. § 541. Unlike a Chapter 7 case, where the debtor's bankruptcy estate is liquidated, the Chapter 13 estate has a more limited purpose, for example, to determine how much a debtor can spend to maintain their property. 8 Collier on Bankruptcy ¶ 1306.1. The Chapter 13 estate definition, § 1306, adopts the Bankruptcy Code's general definition of what property forms the bankruptcy estate found at § 541. But unlike the general definition, which only considers assets at the time of filing, the Chapter 13 estate is forward-looking: it includes the estate as defined at § 541, but also includes assets of the same type acquired postpetition. § 1306.

A Chapter 13 Trustee is appointed to represent creditors in the case. § 1302(b). Once the debtor proposes a repayment plan, the bankruptcy court will hold a hearing to determine if the plan is feasible. §§ 1324–1325. The Trustee and creditors can attend this hearing and object to the plan's confirmation. *Id.* When confirming the plan, the bankruptcy judge must decide if the plan was proposed in "good faith." § 1325(a)(3); *Sisk*, 962 F.3d at 1150–51. Once confirmed, the debtor begins making payments, collection actions are stayed, and the debtor can discharge their debts to unsecured creditors upon completion of the plan. § 1328. In a Chapter 13 case, only debtors who apply all of their "projected disposable income" to "make payments to unsecured creditors" during the plan are entitled to certain relief—they can discharge all unsecured debts upon completion of their bankruptcy plan and the bankruptcy

court can approve the plan over the objections of the bankruptcy Trustee and unsecured creditors. §§ 1325(b)(1)(B), 1328.

Section 1325 calculates a debtor's disposable income using the "ability to pay" test. Current income, defined at § 101(10A)(A), is "the average monthly income from all sources that the debtor receives . . . during the 6-month period" preceding the filing of the bankruptcy case. Disposable income is a debtor's "current monthly income . . . less amounts reasonably necessary to be expended . . . for the maintenance or support of the debtor." 11 U.S.C. § 1325(b)(2)(A)(i). In other words, disposable income is a figure reached by deducting "reasonably necessary" expenses and excluding other specified expenditures from a debtor's current income. § 1325(b)(2).

For debtors whose income is below the census median, § 1325 does not mandate a specific calculation of reasonably necessary expenses. Rather, which expenses are reasonable (and deductible) is a "factual determination for a trial court." *In re Bruce*, 484 B.R. 387, 390 (Bankr. W.D. Wash. 2012).

For above-median income debtors, like Saldana, the primary deduction mandated by § 1325(b) is the "means test," cross-referenced and adopted from the Chapter 7 context at § 707(b). The means test uses Internal Revenue Service standards for necessary expenses. § 707(b)(2)(A)(ii)(I). The Internal Revenue Manual ("IRM") provides National and Local Standards for certain core expenses—housing, utilities, food, clothing, transportation, health care costs, among others—and includes a non-exhaustive list of "Other Necessary Expenses." IRM § 5.15.1.8–11; *see also Egebjerg v. Anderson* (*In re Egebjerg*), 574 F.3d 1045, 1051 (9th Cir.

2009). Apart from the means test, § 1325(b) also deducts domestic support obligations, charitable contributions, and business expenses from disposable income.

In addition to § 1325(b)'s adoption of the means test and other allowances, other sections of the Code describe disposable income exclusions and deductions. For example, § 1322(f) states "any amounts required to repay [specified retirement] loan[s] shall not constitute 'disposable income.'" And, in defining "current income," § 101(10A)(B) excepts social security benefits, military disability payments, and certain other payments. Applying each deduction and exclusion results in a debtor's disposable income. The issue in this case is whether § 541(b)(7) makes one such exclusion for voluntary retirement contributions to employer-managed retirement plans.

## B

Under the Bankruptcy Reform Act of 1978, the consideration of what constitutes disposable income for the purposes of administering a Chapter 13 bankruptcy was confined to Chapter 13. Chapter 5 described the general duties of bankruptcy creditors and debtors and what constituted the property of the bankruptcy estate. The section of Chapter 5 relevant to this case is 11 U.S.C. § 541, which defines the property of the estate. As originally drafted in the Bankruptcy Reform Act of 1978, the section excluded contributions to employer-managed retirement plans from the definition of "property of the estate." *Patterson v. Shumate*, 504 U.S. 753, 759–60 (1992).

However, in 2005, Congress passed the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"). Prior to the enactment of the BAPCPA, courts routinely held that voluntary retirement contributions

were disposable income for the purposes of Chapter 13. *See Davis v. Helbling* (*In re Davis*), 960 F.3d 346, 350 (6th Cir. 2020) (collecting cases).

The BAPCPA aimed to reverse a trend of consumers filing for Chapter 7 bankruptcy, which led consumers to liquidate their assets and resulted in small payments to creditors. Michael D. Contino, Cong. Rsch. Serv., R45137, Bankruptcy Basics: A Primer 11–12, 25–26 & n.298 (2022). The BAPCPA instead encouraged consumers to reorganize under Chapter 13 and make steady payments to creditors over three to five years. *Id.* To accomplish that goal, the BAPCPA's provisions made it harder to file for Chapter 7 bankruptcy, but also offered incentives to file under Chapter 13. *Id.* While generally providing greater protections for creditors, the BAPCPA also added several protections for retirement assets and contributions.

To that end, Congress amended § 541 to provide that:

> (b) Property of the estate does not include
> . . .
> (7) any amount—
> (A) withheld by an employer from the wages of employees for payment as contributions—
> (i) to—
> (I) [an ERISA-qualified plan, such as a 401(k)]; or
> (II) [a 457 deferred compensation plan]; or
> (III) [a 403(b) tax-deferred annuity plan];
> *except that such amount under this subparagraph shall not constitute disposable income as defined in section 1325(b)(2);* . . .
> (B) received by an employer from employees for payment as contributions—

[same plans as (A)]; . . .
*except that such amount under this subparagraph shall not constitute disposable income, as defined in section 1325(b)(2); . . . .*

11 U.S.C. § 541(b) (emphasis added).

The addition italicized in the citation has come to be known as the "hanging paragraph," which is the focus of the instant dispute, and the subject of varied bankruptcy court interpretations.

## III

In construing a statute, "we begin with the plain words of the statute, employing the familiar canons of statutory construction." *Cheneau v. Garland*, 997 F.3d 916, 920 (9th Cir. 2021) (en banc). If the plain language is clear, our inquiry is complete. *United States v. 475 Martin Lane*, 545 F.3d 1134, 1143 (9th Cir. 2008).

Here, the statutory text unambiguously excludes voluntary contributions from a debtor's disposable income in a Chapter 13 case. The hanging paragraph reads: "except that such amount under this subparagraph shall not constitute disposable income as defined in section 1325(b)(2)." § 541(b)(7). The words are plain enough. Congress declared that the referenced funds "shall not constitute disposable income as defined in section 1325(b)(2)." *Id.* The reference is to the type of contributions referred to in the preceding subsection. That is, "any amount" "withheld by an employer from the wages of employees for payment as contributions" or "received by an employer from employees for payment as contributions" to specified retirement plans. *Id.* Thus, pursuant to the plain language of the hanging

paragraph, debtors can exclude any amount of their voluntary retirement contributions to employer-managed plans from their disposable income calculation under Chapter 13. The hanging paragraph language that Congress inserted in the BAPCPA is consistent with Congress's intent to encourage individual debtors to reorganize under Chapter 13 and make consistent payments to creditors, rather than file a Chapter 7 liquidation. Contino, 11–12, 25–26 & n.298; *McDonald v. Master Fin. Inc.* (*In re McDonald*), 205 F.3d 606, 614 (3d Cir. 2000) ("[C]ourts have repeatedly emphasized Congress's preference that individual debtors use Chapter 13 instead of Chapter 7.").

This interpretation is also consistent with the fundamental canons of statutory construction. When Congress substantively revises a statute's text, "we presume it intends its amendment to have real and substantial effect." *Stone v. INS*, 514 U.S. 386, 397 (1995); *Davis*, 960 F.3d at 354–55. "[A] significant change in language is presumed to entail a change in meaning" even when legislative history is silent as to Congress's intent. Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 256–60 (2012); *see United States v. Wells*, 519 U.S. 482, 495–97 (1997). Here, amidst the "overwhelming consensus" before enactment of the BAPCPA that voluntary retirement contributions constituted disposable income, Congress amended § 541 to include the hanging paragraph. *Davis*, 960 F.3d at 350 (quoting *In re Johnson*, 241 B.R. 394, 399 (Bankr. E.D. Tex. 1999)). *Compare* 11 U.S.C. § 541 (1978), *with* 11 U.S.C. § 541 (2024). We presume Congress intended to alter that consensus. Nationally, most of the bankruptcy courts that have considered this issue have also concluded that voluntary retirement contributions do not constitute disposable income for the purposes of Chapter

13. *Davis*, 960 F.3d at 351. The most prominent case for the proposition is *Baxter v. Johnson* (*In re Johnson*), 346 B.R. 256, 263 (Bankr. S.D. Ga. 2006), which read the hanging paragraph like any other disposable income exclusion—such as § 1322(f)'s exclusion for the repayment of retirement loans.

Thus, from the plain language of the statute and the canons of statutory construction, we join the majority of courts that have considered the question in concluding that voluntary retirement contributions do not constitute disposable income for the purposes of Chapter 13.

## IV

In addition to the *Johnson* approach, bankruptcy courts have adopted three other different interpretations concerning the hanging paragraph, namely that § 541(b)(7): (1) includes all voluntary retirement contributions, both pre- and postpetition, under the definition of disposable income in Chapter 13; (2) excludes voluntary retirement contributions from the definition of disposable income, so long as the debtor was making those contributions prior to filing the Chapter 13 bankruptcy petition; and (3) exempts the six-month average of voluntary retirement contributions made prior to the declaration of bankruptcy. We do not find these constructions consistent with the statute.

## A

The Trustee urges that we adopt the rule that disposable income under Chapter 13 includes all voluntary retirement contributions. As we have noted, this approach was adopted by the Ninth Circuit Bankruptcy Appellate Panel in *Parks*, 475 B.R. at 709, and emanates from a decision of the Bankruptcy Court for the District of Montana. *In re Prigge*,

441 B.R. 667, 676–78 & n.5 (Bankr. D. Mont. 2010). Courts following *Parks/Prigge* read the hanging paragraph in the context of § 541, Chapter 13, and the Bankruptcy Code as a whole. The *Parks/Prigge* courts emphasize the placement of the hanging paragraph in the § 541 general provisions concerning what constitutes "property of the estate." These courts phrase the interpretive question as "what is 'excluded' from [sic] property of the estate under § 541(b)(7)(A) which also does not constitute disposable income?" *Parks*, 475 B.R. at 708. To answer it, the *Parks/Prigge* courts give the hanging paragraph a "very limited" meaning: it was "intended to protect amounts withheld by employers from employees that are in the employer's hands at the time of filing bankruptcy, prior to remission of the funds to the plan." *Prigge*, 441 B.R. at 677 n.5.

At base, the approach adopted by the *Parks/Prigge* courts is unpersuasive because it does not give the hanging paragraph *any* meaning. A core canon of statutory construction is the rule against surplusage: courts must construe a statute "so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303, 314 (2009) (quoting *Hibbs v. Winn*, 542 U.S. 88, 101 (2004)); *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001). And where, as here, a proposed "statutory construction . . . 'render[s] an entire subparagraph meaningless,'" we apply the rule against surplusage "with special force." *Pulsifer v. United States*, 601 U.S. 124, 143 (2024) (quoting *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 583 U.S. 109, 128 (2018)).

There is no provision of the Bankruptcy Code that supports the presumption the *Parks/Prigge* interpretation aims to defeat. Limiting the hanging paragraph to protect only those funds an employee contributed prepetition

"makes no sense, because any funds in the hands of the employer as of the [C]hapter 13 petition date would never be considered to be disposable income, which only includes income received by the debtor after the petition is filed." 5 Collier on Bankruptcy ¶ 541.23; *In re Huston*, 635 B.R. 164, 174 (Bankr. N.D. Ill. 2021); *In re McCullers*, 451 B.R. 498, 505 (Bankr. N.D. Cal. 2011) ("[I]t is unlikely even without the language in question that excluding sums earned by the debtor prepetition from property of the estate would ever be construed as creating postpetition disposable income to [a] debtor."). The debtor has already earned the amount withheld by the employer. When those funds are remitted to their retirement plan, the debtor does not realize any new income. Thus, the *Parks/Prigge* approach leaves the hanging paragraph without meaning—a result which Congress could not have intended.

The Trustee places great weight on the hanging paragraph's placement in Chapter 5 of the Bankruptcy Code, which defines the property of the bankruptcy estate, instead of § 1325, where the bulk of Chapter 13's disposable income analysis is dictated. But any inference that might be drawn from the hanging paragraph's placement in Chapter 5 is defeated by § 541(b)(7)'s explicit reference to § 1325, Chapter 13's disposable income calculation. This conclusion is reinforced by § 1306, which explicitly adopts § 541, the Bankruptcy Code's general definition of the estate, as the baseline for defining the Chapter 13 estate. That the hanging paragraph appears outside of § 1325's disposable income definition is not odd. Section 1322(f), which excludes retirement loan repayments from disposable income, appears in the section describing Chapter 13 plan requirements, not § 1325. The explicit text of §§ 541, 1306,

and 1325 outweighs any implicit meaning derived from the Code's structure.

The Trustee also directs our attention to the hanging paragraph's use of "except that," reasoning its disposable income exclusion should represent an exception to some general rule established by the section.  The *Parks/Prigge* interpretation does not fare better under this rationale, as an exception without effect is hardly an exception at all. Regardless, drawing from the Sixth Circuit's analysis in *Davis*, we note that Congress uses "except that" at other points in the Bankruptcy Code to mean something other than a straightforward exception, instead with usage akin to the conjunctions "'moreover' or 'and also.'"  960 F.3d at 356 (first citing 11 U.S.C. § 351(2); and then citing 11 U.S.C. § 724(b)).  "When there are two ways to read the text"—one where the phrase "except that" "is surplusage, in which case the text is plain," and another where the phrase "is nonsurplusage . . . in which case the text is ambiguous"— "[w]e should prefer the plain meaning." *Lamie v. U.S. Tr.*, 540 U.S. 526, 536 (2004).[1]

Finally, the Trustee argues that adopting the *Johnson* approach would upset Chapter 13's balance of interests between creditors and debtors and invite debtor abuse.  But Congress already balanced those interests in the text of the BAPCPA. "We are not at liberty to 'alter the balance struck

---

[1] Although we need not rely on it here because we find the text unambiguous, the legislative history (which largely repeats the text of the statute) does not contain any language that suggests Congress intended for the hanging paragraph to serve as an exception to the remainder of § 541. H.R. Rep. No. 109–31, at 82 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 88, 149 ("Such contributions do not constitute disposable income as defined in section 1325(b)(2) of the Bankruptcy Code.").

by the statute' when interpreting the Code." *Sisk*, 962 F.3d at 1145 (quoting *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 471 (2017)).   And this exemption for voluntary retirement contributions does not stand alone in the BAPCPA.  The Amendments introduced several protections for retirement contributions, including the aforementioned exclusion of retirement loan repayments from a debtor's disposable income as well as other safeguards for retirement savings.   § 1322(f); *see, e.g.*, § 522(b)(3)(C) (excluding some retirement funds from the property of the estate).

The *Johnson* approach assuredly allows debtors to devote income to retirement savings that would otherwise go to creditors, but it is not without limitation.  The types of retirement plan contributions protected by the hanging paragraph are generally subject to annual contribution limits. *See In re Cantu*, 553 B.R. 565, 577 (Bankr. E.D. Va. 2016), *aff'd sub nom. Gorman v. Cantu* (*In re Cantu*), 713 Fed. App'x 200 (4th Cir. 2017).  And all Chapter 13 plans are subject to a good faith requirement.  Bankruptcy courts retain the ability to conduct a "fact-intensive examination of the 'totality of the circumstances'" to determine if a debtor's plan is proposed in good faith.  *Sisk*, 962 F.3d at 1150 (quoting *Drummond v. Welsh* (*In re Welsh*), 711 F.3d 1120, 1132 (9th Cir. 2013)); *cf. id.* at 1151 ("Debtors do not lack good faith 'merely for doing what the Code permits them to do.'" (quoting *Welsh*, 711 F.3d at 1132)).   A debtor's "motivation and forthrightness with the court in seeking relief" remain relevant in assessing their good faith.  *Welsh*, 711 F.3d at 1132.

In sum, applying the *Parks/Prigge* holding would run afoul of the express language of the statute, and there are adequate protections in Chapter 13 to avoid debtor abuse.

## B

The Bankruptcy Appellate Panel for the Sixth Circuit adopted a middle-ground interpretation between the *Parks/Prigge* and *Johnson* interpretations. In *Burden v. Seafort* (*In re Seafort*), it held that voluntary retirement contributions are not disposable income, so long as a debtor was making the contributions prior to declaring bankruptcy. 437 B.R. 204, 209–10 (B.A.P. 6th Cir. 2010). In *Seafort*-BAP, the panel focused on the fact that § 541(a)(1) "establish[es] a fixed point in time" to consider a debtor's contributions to their employer-managed retirement plan. *Id.* at 209.[2]

However, the *Seafort*-BAP approach lacks any textual support in the Bankruptcy Code. Although this interpretation may present an attractive compromise between the *Johnson* and *Parks/Prigge* constructions, there is no foundation in the Code to limit a debtor's disposable income to the debtor's prepetition contribution amount. While § 541(a)(1) considers the commencement of a case

---

[2] Reviewing *Seafort* on appeal, the Sixth Circuit did not reach the issue because the debtors in that case were not making any prepetition contributions. *Seafort v. Burden* (*In re Seafort*), 669 F.3d 662, 663–64 (6th Cir. 2012). However, the Sixth Circuit then rejected the *Johnson* interpretation. *Id.* at 673–74 & n.7. Subsequently, the Sixth Circuit rejected the *Parks/Prigge* interpretation, and decided that contributions equal to or less than the prepetition amount are not disposable income. *Davis*, 960 F.3d at 357–58. Then, in *Penfound v. Ruskin (In re Penfound)*, 7 F.4th 527, 534 (6th Cir. 2021), the Sixth Circuit held "that the bankruptcy code's text does not permit a Chapter 13 debtor to use a history of retirement contributions from years earlier as a basis for shielding voluntary post-petition contributions from unsecured creditors." In so holding, the court stated, "we once again have no reason to choose between the *Seafort*-BAP and CMI interpretations of the hanging paragraph." *Id.*

when defining assets *included* in the estate, § 541(b) contains no express time limitation in defining assets *excluded* from the estate. To adopt this theory would "insert phrases and concepts into the statute that simply are not there." *Gruntz v. County of Los Angeles* (*In re Gruntz*), 202 F.3d 1074, 1085 (9th Cir. 2000) (en banc).

In sum, the Bankruptcy Code does not provide any basis to limit the amount of voluntary retirement contributions a debtor can exclude to their prepetition contribution amount.

C

An additional theory has been espoused by some bankruptcy courts in the Western District of Washington. Those courts hold that § 541(b)(7) exempts voluntary retirement contributions by excluding them from a debtor's current income, one component in the disposable income analysis. *In re Anh-Thu Thi Vu*, No. 15-41405, 2015 WL 6684227, at *3–4 (Bankr. W.D. Wash. June 16, 2015). Because the calculation of current income relies on a six-month look-back period, under this approach a debtor can exclude the six-month average of their voluntary retirement contributions prior to filing. This theory is usually referenced as the "CMI" or "Current Median Income" approach. The main differences between the CMI and the *Seafort*-BAP interpretations are that it (1) benefits debtors who had been making contributions for at least six months before filing over debtors who recently began or increased their contributions in those six months, and (2) benefits below-median debtors as well. *Anh-Thu Thi Vu*, 2015 WL 6684227, at *4; *Huston*, 635 B.R. at 178–79.

However, the CMI interpretation also lacks textual support in the Bankruptcy Code. It conflates the concepts of "current income" and "disposable income." Current income

is just one component of the disposable income calculation, and is thus distinct from disposable income. Section 541(b)(7) specifically references disposable income, but never discusses the concept of current income. "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 432 (1987) (alteration in original) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)). In sum, there is no textual support for the CMI interpretation, and to employ it would require mixing distinct concepts.

V

In summary, we conclude, consistent with the majority of bankruptcy courts, that voluntary contributions to employer-managed retirement plans do not constitute disposable income in a Chapter 13 bankruptcy. Therefore, we reverse the district court, and remand for further proceedings consistent with this opinion. Each side shall bear its own costs.

**REVERSED and REMANDED.**

CALLAHAN, Circuit Judge, dissenting:

The majority claims that 11 U.S.C. § 1325(b)(1), which has been referred to as the "hanging paragraph," and which has spawned at least four different judicial interpretations, is unambiguous. The majority's focus on canons of statutory construction to unravel the "grammatical puzzle," *Davis v. Helbling (In re Davis)*, 960 F.3d 346, 354 (6th Cir. 2020), leads it to adopt a result that is contrary to the general purpose of the underlying statute. A result for which there is really no evidence (other than the majority's selective use of canons of statutory construction) that Congress intended. Accordingly, I dissent from the majority conclusion that voluntary contributions to employer-managed retirement plans do not constitute disposable income in a Chapter 13 bankruptcy.

We start at the same place. Before Congress passed the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") "courts routinely held that voluntary retirement contributions were disposable income for purposes of Chapter 13." Op. at 10-11 (citing *In re Davis*, 960 F.3d at 350). This makes sense. The purpose of a Chapter 13 proceeding is to allow a debtor to "make steady payments to creditors over three to five years" (Op. at 11) in return for which the debts are discharged. But as the creditors will receive less than full payment, any income a debtor with above average income does not need to survive during those three to five years should be allocated as disposable income. Voluntary retirement contributions are by their very nature "voluntary" as that term is commonly understood. The debtor is under no obligation to make them. The debtor could instead invest in the stock market, buy cryptocurrency, or play the lottery. Why should the debtor's

choice of placing some of the disposable income in one particular type of investment make it unavailable to the creditors?

The majority does not really address the consequences of its determination as much as assert that canons of statutory construction support, indeed, compel this conclusion. But in doing so, it misperceives that "the statutory text unambiguously excludes voluntary contributions from a debtor's disposable income in a Chapter 13 case." Op. at 12. If this were true, there would be no need for the opinion's elaboration on the canons of statutory construction. More accurately stated, the majority's position is that the application of canons of statutory construction compels the conclusion that what has been described as a "Gordian knot"[1] or a "grammatical puzzle," is unambiguous.

I do not find the majority's reasoning compelling because, as the majority admits, in the almost twenty years since the passage of the BABCPA, bankruptcy courts and circuit courts have found not one or two meanings of the "hanging paragraph" but four meanings. As explained in some detail below, I agree with my many colleagues who have found that the "hanging paragraph" is truly ambiguous and I conclude that the application of canons of statutory construction to the "hanging paragraph" does not resolve the ambiguity in a compelling manner.

First, while the "words are plain enough" (Op. at 12), their context denies them clarity. This becomes clear when the majority's statement is contrasted with the texts of other

---

[1] *See Penfound v. Ruskin (In re Penfound)*, 7 F.4th 527, 531 (6th Cir. 2021) (citing *In re Vanlandingham*, 516 B.R. 628 (Bankr. D. Kan. 2014)).

judicial decisions addressing the "hanging paragraph."  The majority opines:

> Here, the statutory text unambiguously excludes voluntary contributions from a debtor's disposable income in a Chapter 13 case. The hanging paragraph reads: "except that such amount under this subparagraph shall not constitute disposable income as defined in section 1325(b)(2)." § 541(b)(7). The words are plain enough. Congress declared that the referenced funds "shall not constitute disposable income as defined in section 1325(b)(2)." § 541(b)(7). The reference is to the type of contributions referred to in the preceding subsection. That is, "any amount" "withheld by an employer from the wages of employees for payment as contributions" or "received by an employer from employees for payment as contributions" to specified retirement plans. § 541(b)(7). Thus, pursuant to the plain language of the hanging paragraph, debtors can exclude any amount of their voluntary retirement contributions to employer-managed plans from their disposable income calculation under Chapter 13. The hanging paragraph language that Congress inserted in the BAPCPA is consistent with Congress's intent to encourage individual debtors to reorganize under Chapter 13 and make consistent payments to creditors, rather than file a Chapter 7 liquidation. Contino, 11–12, 12 25–26 & n. 298; *McDonald v. Master Fin.*

*Inc.* (*In re McDonald*), 205 F.3d 606, 614 (3d Cir. 2000) ("[C]ourts have repeatedly emphasized Congress's preference that individual debtors use Chapter 13 instead of Chapter 7.").

Op. at 12–13.

This may seem reasonable but is hardly compelling when compared to the to the opinion of three bankruptcy judges in *In re Parks*, 475 B.R. 703 (9th Cir. BAP 2012).

> As with other provisions contained in BAPCPA, applying statutory interpretation rules to discern Congress's intent in adding § 541(b)(7) is easier said than done. In this case, the statute's placement within § 541 instead of chapter 13 and its reference to disposable income under § 1325(b)(2) in the hanging paragraph reflects its ambiguity. These contextual conundrums have split the courts nationwide. Compare *Baxter v. Johnson (In re Johnson)*, 346 B.R. 256, 263 (Bankr. S. D. Ga.2006) (holding that § 541(b)(7) excludes all voluntary retirement contributions, both pre and postpetition, from disposable income) and the cases following *Johnson* with *In re Prigge*, 441 B.R. 667 (holding § 541(b)(7) does not permit exclusion of postpetition voluntary retirement contributions in any amount when determining disposable income); *In re McCullers*, 451 B.R. 498, 503–05 (Bankr. N. D. Cal.2011) (same); *Seafort v. Burden (In re*

*Seafort*), 669 F.3d 662, 673–74 (6th Cir.2012) (same). Although none of these decisions are binding on us, we find the *Prigge* line of cases persuasive. To avoid repetition, we borrow heavily from these decisions.

We begin by looking at the language and structure of § 541, which defines property of the estate generally, as well as its relationship to § 1306, which completes the definition of property of the estate for purposes of chapter 13.

Section 541(a)(1) defines property of the estate as including "all legal or equitable interests of the debtor in property as of the commencement of the case" and § 541(a)(6) states that "earnings from services performed by an individual debtor after the commencement of the case" are not brought into the estate. Under the plain reading, "as of the commencement of the case", a debtor's postpetition earnings are not included in property of the estate. However, because this is a chapter 13 case, we cannot ignore the relationship between § 541 and § 1306. Section 1306(a) states:

Property of the estate includes, in addition to the property specified in section 541 of this title—

....

(2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first.

"Section 1306(a) expressly incorporates § 541. Read together, § 541 fixes property of the estate as of the date of filing, while § 1306 adds to the 'property of the estate' property interests which arise post-petition." *In re Seafort*, 669 F.3d at 667. It is § 1306(a)(2) which operates to bring the debtor's earnings from postpetition services into his or her estate.

Given this statutory framework, the question then becomes what is "excluded" from property of the estate under § 541(b)(7)(A) which also does not constitute disposable income? In answering this question, we keep in mind that statutory provisions are to be read in harmony in the context of the whole statute. *Hougland v. Lomas & Nettleton Co. (In re Hougland)*, 886 F.2d 1182, 1184 (9th Cir. 1989) (citing *Davis v. Mich. Dept. of Treasury,* 489 U.S. at 809, 109 S. Ct. 1500). All parts of a statute are to be read as a whole, and in harmony with one another, and not in conflict. *Culver, LLC v. Chiu (In re Chiu)*, 266 B.R. 743, 747, 750 (9th Cir. BAP 2001), *aff'd*, 304 F.3d 905 (9th Cir. 2002). In light of these principles, by reading § 541(a)(1) and § 541(b)(7)(A) together, the most reasonable interpretation of § 541(b)(7)(A) is that it

excludes from property of the estate only those 401(k) contributions made before the petition date. *In re Seafort*, 669 F.3d at 673; *In re McCullers*, 451 B.R. at 503–05; *see also In re Prigge*, 441 B.R. at 677 n. 5 (noting that § 541(b)(7) "seems intended to protect amounts withheld by employers from employees that are in the employer's hands at the time of filing bankruptcy, prior to remission of the funds to the plan.") (citing 5 COLLIER ON BANKRUPTCY, ¶ 541.22(C) [1] (15th ed. rev.)). Otherwise, as noted by the Sixth Circuit in *In re Seafort*, if "contributions to a qualified retirement plan never constitute property of a bankruptcy estate ... Congress would not have needed to include an additional provision in § 541(b)(7)(A) stating that such contributions are excluded from disposable income." 669 F.3d at 673.

From here, it follows that "such amount" referred to in the hanging paragraph of § 541(b)(7)(A) means that only prepetition contributions shall not constitute disposable income. *In re McCullers*, 451 B.R. at 503–04. As a consequence, we are persuaded that the term "except that" in the hanging paragraph was designed simply to clarify that the voluntary retirement contributions excluded from property of the estate are not postpetition income to the debtor. *Id*. at 504–05. Finally, to give meaning to the words "under this subparagraph" found in the

hanging paragraph, it is reasonable to conclude that "Congress intentionally limited the type of contributions to qualified retirement plans that would be excluded from disposable income, namely those 'under this subparagraph', § 541(b)(7)(A), which in turn governs only those contributions in effect as of the commencement of a debtor's bankruptcy case, per § 541(a)(1)." *In re Seafort*, 669 F.3d at 673.

We also attach significance to the fact that § 1306(a)(2) makes postpetition earnings of a debtor part of his or her estate but nowhere in chapter 13 are voluntary retirement contributions excluded from disposable income. To the contrary, when Congress amended BAPCPA, it chose to exclude the repayment of 401(k) loans from disposable income in § 1322(f).4 "Where Congress includes particular language in one section of a statute but omits it in another, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Keene Corp. v. United States*, 508 U.S. 200, 208, 113 S. Ct. 2035, 124 L.Ed.2d 118 (1993). Accordingly, it is likely "that Congress did not intend to treat voluntary 401(k) contributions like 401(k) loan repayments, because it did not similarly exclude them from 'disposable income' within Chapter 13 itself." *In re Seafort*, 669 F.3d at 672. Simply put, without a clearer direction comparable to the carve out from

disposable income for the repayment of retirement loans in § 1322(f), it seems unlikely that Congress intended § 541(b)(7)(A) to bestow a benefit on above-median chapter 13 debtors while their creditors absorbed an even greater loss.

475 B.R. at 707–09.

While the majority's reasoning is shorter, the approach in *In re Parks* seems as reasonable, if not more reasonable. The majority's interpretation of the "hanging paragraph" may be plausible, but it is not compelled nor consistent with bankruptcy law and the BAPCPA.

The majority attempts to buttress its conclusion by arguing that it is consistent with the fundamental canons of statutory construction. Op. at 13. It argues that: "When Congress substantively revises a statute's text, 'we presume it intends its amendment to have real and substantial effect.'" Op. at 13 (quoting *Stone v. I.N.S.*, 514 U.S. 386, 397 (1995). It reasons that because the "overwhelming consensus" before the enactment of the BAPCPA was that voluntary retirement contributions constituted disposable income, Congress's amendment of § 541 to include the "hanging paragraph" must have been intended to alter the consensus. Op. at 13. But this reasoning ignores the many other ways in which the BAPCPA changed bankruptcy law. It reasons backwards, assuming that the hanging paragraph—a truly minor provision in a broader piece of legislation, which most courts have found to be incomprehensible—must have been intended to have "real and substantial effect." Op. at 13. Thus, presumptions from canons of statutory construction are allowed to create a congressional intent where there is no real evidence of such an intent.

Judge Readler in his careful and critical dissent in *In re Davis*, 960 F.4th at 358, offers a sound rebuttal to the argument that the "hanging paragraph" was intended to exclude, for the first time, post-petition voluntary payments to retirement accounts from "disposable income." He reasons:

> Having followed the background judicial rule as to pre-petition 401(k) assets, there is no indication that Congress simultaneously displaced the parallel background judicial rule as to post-petition 401(k) contributions. Had Congress decided against a uniform approach to the existing case law backdrop, thereby supplanting the background majority rule that post-petition 401(k) contributions are part of a debtor's disposable income and thus accessible by creditors, it would have said so in express terms. See *Miles v. Apex Marine Corp.*, 498 U.S. 19, 32, 111 S. Ct. 317, 112 L.Ed.2d 275 (1990) (holding that when Congress incorporated the Federal Employers' Liability Act ("FELA") into the Jones Act without alteration, it also incorporated the prior judicial interpretation of FELA in the Act, as that interpretation was "well established," and "Congress is aware of existing law when it passes legislation"). And Congress, of course, knew how expressly to exclude a debtor's assets from creditors. Case in point: it expressly excluded pre-petition 401(k) contributions from the "property of the estate" available to creditors. 11 U.S.C. § 541(b)(7)(A). Yet Congress, neither in

§ 541(b) nor anywhere else, made any express reference to a Chapter 13 debtor's post-petition 401(k) contributions being excluded from the disposable income available to creditors during the repayment period. Especially in light of the express language in § 541(b)(7)(A), that absence is telling. See *Keene Corp. v. United States,* 508 U.S. 200, 208, 113 S. Ct. 2035, 124 L.Ed.2d 118 (1993) ("Where Congress includes particular language in one section of a statute but omits it in another, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (quoting *Russello v. United States*, 464 U.S. 16, 23, 104 S. Ct. 296, 78 L.Ed.2d 17 (1983) (alterations omitted))).

That Congress did not disrupt the then-existing approach to post-petition 401(k) contributions makes sense not only as a reflection of Congress's consistent treatment of the Chapter 13 case law backdrop, but also as a reflection of Congress's efforts to balance the interests of debtors and creditors. Through § 541(b)(7)(A), Congress preserved a debtor's pre-filing retirement contributions, which were made at a time when the debtor was unencumbered by the bankruptcy process, incentivized by the tax code, and had an eye to the future. Compare those circumstances, however, to the aftermath of a Chapter 13 filing. By her filing, the debtor has acknowledged that her debts have

overwhelmed her income, that she cannot honor obligations made to creditors, and that a new financial path is in order. In that setting, the bankruptcy laws harmonize the needs of debtors and unsecured creditors. See *8A C.J.S. Bankruptcy § 2 (2020)*. For debtors, Congress afforded them the opportunity to resolve many debts over the course of a three- or five-year period, where a debtor's spending is tightly controlled by the contours of her bankruptcy plan. *8B C.J.S. Bankruptcy § 1204 (2020)*. For unsecured creditors, Congress afforded them a handful of years over which repayment by the debtor is emphasized, to the extent the debtor has "disposable income," that is, income above that needed to afford "current," "necessary" expenses for the debtor's "maintenance or support." *Id*.; 11 U.S.C. § 1325(b)(2). And the expenses necessary for current support do not include, at least for three to five years, additional 401(k) contributions a debtor may want to make. *Seafort*, 669 F.3d at 674. As a trade-off for bankruptcy protection and the discharging of debts, and as an effort to compensate unsecured creditors as fairly as possible, the bankruptcy code does not guarantee 401(k) contributions by a debtor until a bankruptcy plan has run its course.

960 F.3d at 359–60.  Judge Readler continues:

To fortify its protection of pre-filing 401(k) contributions, Congress made a second

addition to § 541(b)(7)(A), one commonly referred to as the "hanging paragraph." There, Congress added to § 541(b)(7)(A)'s "any amount" provision the clause: "except that such amount under this subparagraph shall not constitute disposable income." As we explained in *Seafort*, with § 541(b)(7)(A) addressing the gross "amount" of a debtor's pre-filing 401(k) contributions, the ensuing "such amount under this subparagraph" clause must reference the same gross "amount" referenced earlier in the subparagraph: pre-filing 401(k) contributions. 669 F.3d at 670 ("[A] close reading of [§] 541(b)(7) indicates that 'such amount' excluded from disposable income refers to prepetition contributions." (quoting *In re McCullers*, 451 B.R. 498, 503 (Bankr. N.D. Cal. 2011))). Equally instructive is the hanging paragraph's opening phrase: "except that." 11 U.S.C. § 541(b)(7)(A). That too is evidence the paragraph was intended to further protect a debtor's pre-petition 401(k) account. That is, not only is the value of the 401(k) account at the time of filing not considered property of the estate, see 11 U.S.C. § 541(b)(7)(A), but it also "shall not constitute" any part of a debtor's post-petition "disposable income." *McCullers*, 451 B.R. at 503–04. ("Use of the term 'except that' suggests that the purpose of the language is merely to counteract any suggestion that the exclusion of such

contributions from property of the estate constitutes postpetition income to the debtor.").

It is often the case that congressional "drafters intentionally err on the side of redundancy," to ensure nothing slips through the legislative cracks. Abbe R. Gluck & Lisa Schultz Bressman, Statutory Interpretation from the Inside—An Empirical Study of Congressional Drafting, Delegation, and the Canons: Part I, 65 Stan. L. Rev. 901, 934 (2013) (noting that Congressional drafters "intentionally err on the side of redundancy to capture the universe or because you just want to be sure you hit it") (internal quotation marks omitted). For the sake of certainty, the hanging paragraph serves as a "backstop" against creative arguments by unsecured creditors seeking to reach the debtor's pre-petition 401(k) assets during the Chapter 13 repayment period. *Cf. Yates v. United States*, 574 U.S. 528, 562, 135 S. Ct. 1074, 191 L.Ed.2d 64 (2015) (Kagan, J., dissenting, joined by Scalia, Kennedy, and Thomas, JJ.) (noting that a seeming statutory redundancy merely "reflects belt-and-suspenders caution: If § 1519 contained some flaw, § 1512(c)(1) would serve as a backstop").

And zealously guarding in all respects pre-petition 401(k) assets is not a trivial concern. Generally speaking, a well-performing 401(k) account generates earnings and/or income, yet "[n]either 'earnings' nor

> 'income' is defined by the Bankruptcy
> Code." 7 Norton Bankr. L. & Prac. 3d
> § 149:3 (2020). To the extent the treatment of
> earnings, income, or other assets related to a
> pre-petition 401(k) account is unsettled,
> creditors, in the absence of the hanging
> paragraph, could argue that amounts
> generated by a pre-petition 401(k) during the
> post-petition repayment period qualify as
> disposable income, which those creditors
> may claim. Yet those amounts trace back to
> the same pre-petition 401(k) account created
> initially from funds "withheld by an
> employer from the wages of employees." 11
> U.S.C. § 541(b)(7)(A).

7 F.4th at 360-61.

Citing *In re Davis*, the majority next seeks shelter in the observation that "most of the bankruptcy courts who have considered this issue have concluded that voluntary retirement contributions do not constitute disposable income for purposes of Chapter 13." Op. at 13 (citing *In re Davis*, 960 F.3d at 351).

However, *In re Davis* is not the last word from the Sixth Circuit. In *In re Penfound,* the Sixth Circuit stated that in *In re Seafort*, 669 F.3d 662 (6th Cir. 2012), it had squarely rejected the "*Johnson* view," which placed post-petition retirement contributions outside the purview of Chapter 13. *In re Penfound* explained that "the bankruptcy code does not countenance such a debtor-friendly result" as to allow post-petition contributions to be excluded for disposable income. *Id.* Rather, "post-petition income that becomes available to debtors after their 401(k) loans are fully repaid is 'projected

disposable income' that must be turned over to the trustee for distribution to unsecured creditors.'"  *Id*. (quoting *Seafort*, 669 F.3d at 663).  The Sixth Circuit distinguished the situation in *In re Penfound* from the situation in *In re Davis*, 960 F.3d at 349, where "a debtor had made steady contributions to her 401(k) for at least six months prior to bankruptcy" and "sought to continue making those regular contributions throughout her commitment period."  *In re Penfound*, 7 F.4th at 531.  *In re Penfound* reasoned that in *In re Davis*, the court had held that the hanging paragraph is "best read to exclude from disposable income the monthly 401(k)-contributions amount that Davis's employer withheld from her wages *prior* to her bankruptcy" *Id*.[2] (quoting *In re Davis*, 960 F. 3d at 354-55) (emphasis added).  The Sixth Circuit further commented that in *In re Davis* it had rejected the *Prigge* interpretation "which never would

---

[2] The Sixth Circuit reasoned:

> This interpretation construed BAPCPA's addition of the hanging paragraph "in a way that actually amend[ed] the statute." Id. at 355; *see Stone v. INS*, 514 U.S. 386, 397, 115 S. Ct. 1537, 131 L.Ed.2d 465 (1995) ("When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect."). And it also gave "a meaningful effect—one not already accomplished by § 1325(b)(2)—to Congress's instruction in § 541(b)(7) that 401(k) contributions 'shall not constitute disposable income.'" *Davis*, 960 F.3d at 355; *see Liu v. SEC*, 591 U.S. 71, 88, 140 S. Ct. 1936, 1948, 207 L.Ed.2d 401 (2020) (expressing the "cardinal principle of interpretation that courts must give effect, if possible, to every clause and word of a statute" (citation omitted)).

7 F.4th at 531–32.

have permitted a debtor to shield voluntary post-petition 401(k) contributions from creditors." *Id.* at 532.

In *In re Penfound*, the Sixth Circuit concluded that constrained by its prior rejections of the *Johnson* approach (placing retirement contributions outside the purview of Chapter 13) and the rejection of the *Prigge* approach (placing retirement contributions within the purview of Chapter 13), it opted for a version of the "CMI interpretation" which construes the hanging paragraph as excluding from a debtor's disposable post-petition income contributions to a retirement plan consistent with the debtor's contributions for six months prior to bankruptcy.[3] *Id.* at 532–33.

I agree with the vast majority of the judges who have had to construe the "hanging paragraph" that it is indeed ambiguous.   Having considered the four different interpretations offered by the courts over the last quarter century, I do not find that the application of canons of statutory construction offer a compelling interpretation of the statute.   Nonetheless, we are charged with applying the statute where, as here, its application has real consequences to the parties.   Accordingly, as Congress's intent in enacting the "hanging paragraph"—assuming it had an intent— eludes discovery, we must determine for ourselves how to enforce the "hanging paragraph."   Consistent with another

---

[3] In response to criticism that the court had sua sponte added a six month look-back period, the Sixth Circuit explained: "the reason *Davis* examined the debtor's contributions in the six months pre-filing is that this is the longest look-back period supported by the text of the bankruptcy code and our precedent. As we have explained, the *Seafort*-BAP interpretation would consider a debtor's recurring contribution amount "at the time [his] case [was] filed."  7 F.4th at 533–34 (citing *Seafort*, 437 B.R. at 210 and *In re Davis*, 960 F.3d at 352).

canon of construction, we should consider how to interpret it so that it fits into, and complements, the other provisions of bankruptcy law.

The Sixth Circuit has repeatedly considered the "hanging paragraph" and I find its approach in *In re Penfound* to most closely conform to the other provisions of bankruptcy law. Perhaps excluding from a debtor's disposable post-petition income contributions to a retirement plan that are consistent with the debtor's contributions for six months prior to bankruptcy is a compromise that will satisfy neither the advocates of *Johnson* nor of *Prigge.*  But it is a workable solution that recognizes the competing interests and is consistent with the overall purposes of bankruptcy law.  This approach does the least amount of harm until such time as Congress decides to clarify the statute or change the law. Accordingly, I dissent from the majority's conclusion that voluntary contributions to employer-managed retirement plans do not constitute disposable income in a Chapter 13 bankruptcy.